# JAMES LEWIS v. JENS JOHNSON.[1]

November 21, 1913.

Nos. 18,217—(58).

**Acceptance of offer — change of terms.**

> A party to whom an offer of contract is made must either accept it wholly or reject it wholly. A proposition to accept on terms varying from those offered, is a rejection of the offer and a substitution in its place of the counter proposition. It puts an end to the negotiation so far as the original offer is concerned. The original offer thereby loses its vitality and is no longer pending; hence the party who has submitted the counter proposition cannot, at his own option, revive and accept the original offer which he has once virtually rejected. In order to give the rejected offer any new vitality, there must be a renewal of it, or renewed assent to it, by the party who made it. In a case within the statute of frauds, the agreement to deal on the basis of the rejected offer must be in writing.

Action, transferred to the district court for Hennepin county, to recover $2,240 for failure on the part of defendant to perform an agreement in writing, consisting of a series of letters between the parties and subscribed by them, for the sale of the premises described in the complaint. The answer was a general denial. The case was tried before Dickinson, J., who granted defendant's motion for a directed verdict in his favor. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Charles S. Marden* and *W. B. Douglas,* for appellant.

*James A. Peterson* and *Paul J. Thompson,* for respondent.

HALLAM, J.

Defendant owned a half section of land in Clay county. Plaintiff entered into negotiations to buy it. The negotiations were con-

---

[1] Reported in 143 N. W. 1127.

Note.—On the question of parol modification of original contract required to be in writing, see note in 4 L.R.A.(N.S.) 980. And for statute of frauds as affecting parol variation of instrument, see note in 28 L.R.A.(N.S.) 876.

ducted by correspondence and a number of letters were exchanged between them. Plaintiff claims a contract of sale was made and that it was broken by defendant. Defendant denies that any contract was ever made. There are two letters which, if they could be taken alone, would make out a contract. The first is a letter written by defendant to plaintiff, dated January 8, 1909, making a proposition as follows:

"I will accept your offer of $21.00 per acre. * * * This must be spot cash. Subject to the mortgage of $3,000.00 which is due next fall. You will have to make settlement to the renters for the plowing done this fall."

The other is a letter written by plaintiff to defendant, of January 26, 1909, purporting to accept the above proposition.

The trouble arises from the fact that there was intervening correspondence which precludes our regarding these two letters as a completed offer and acceptance. This intervening correspondence was as follows: When plaintiff received the letter of January 8, instead of accepting its terms, he wrote the following: "Now Mr. J. Johnson I will give you what I said for the land $21.00 per acre," —entirely eliminating the matter of settlement with the renters, and of the incumbrance on the land. This was not an acceptance of defendant's offer. It was a rejection of it. 9 Cyc. 290; Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126; Bastian Bros. Co. v. Wemott-Howard Co. 113 Minn. 196, 129 N. W. 369; Minneapolis & St. L. Ry. v. Columbus Rolling Mill, 119 U. S. 149, 151, 7 Sup. Ct. 168, 32 L. ed. 376; Egger v. Nesbitt, 122 Mo. 667, 676, 27 S. W. 385, 43 Am. St. 596. There was still further correspondence before the letter of January 26. On January 13, defendant wrote plaintiff stating that the mortgage instead of being $3,000 on the half section in question, was $6,000 on the whole section, and further stating, "I have no contract with parties who are to rent the land for this season, but they did some plowing last fall * * *. If I sell to you, you will have to take care of the renters," and adding the further significant language, "I will not accept my money on this deal until everything is arranged satisfactorily to all parties interested," evidently meaning that everything must be arranged "satis-

:factorily" to the tenants. The terms contained in this letter are not identical with those of the letter of January 8. On January 14, 1909, plaintiff again wrote making still another counter propo-.sition. After all this intervening correspondence, varying on both .sides from the original offer of January 8, plaintiff could not catch up this letter of January 8, and, by writing a letter accepting its terms, making a binding contract, without some renewed assent thereto on the part of the defendant. This is well settled.

The law is that a party to whom an offer is made is at liberty to .accept wholly, or to reject wholly, but one of these things he must .do. 1 Parsons, Contracts, *477. A proposition to accept on terms varying from those offered, is a rejection of the offer and a sub-.stitution in its place of the counter proposition. It puts an end to the negotiation so far as the original offer is concerned. The .original offer thereby loses its vitality, and is no longer pending between the parties; hence, the party who has submitted the counter .proposition cannot, at his own option, revive and accept the original offer, which he has once virtually rejected. Fox v. Turner, 1 Bradw. (Ill. App.) 153. See also Lanz v. McLaughlin, 14 Minn. .55 (72), and cases above cited. In order to give the rejected offer .any new vitality, there must be a renewal of it, or renewed assent to .it, by the party who made it. The Sheffield Canal Co. v. The Sheffield and Rotherham Ry. Co. 3 Eng. Ry. & Canal Cases, 121, 132. The attempted acceptance of a rejected offer is in effect nothing .more than a proposal which must be assented to by the original offerer before any contract arises. The revival of the rejected offer is an essential part of the contract and it must be proven as a sub-.stantive fact.

It is not contended that defendant assented to a revival of his .offer of January 8 in express terms. Plaintiff contends that he did so by assenting to completion of the negotiations in accordance with this letter. The evidence of such assent is that he employed an at-.torney "to fix up the title;" that the attorney, at defendant's direction, caused abstracts of title to be forwarded to plaintiff's at-.torney; and carried on some correspondence with plaintiff's attor-.mey. If we were called upon to determine the significance of those

acts, we should deem them of doubtful force as tending to establish a contract, in view of the attitude in fact taken by this attorney in the correspondence that followed. This correspondence showed that differences as to the terms on which the parties were to contract arose at the very inception of the renewed negotiations. We are, however, relieved from determining the effect of the somewhat equivocal character of these acts by the express terms of the statute of frauds. This is a contract for the sale of land, which, under the statute of frauds, must be in writing. It seems to us self evident that if parties agree to deal on the basis of a rejected offer, the vendor's assent thereto, being an essential part of the contract, must be in writing. Davis v. Parish's Representatives, Littell's Sel. Cas. (Ky.) 153, 12 Am. Dec. 287; Sprague v. Hosie, 155 Mich. 30, 118 N. W. 497, 19 L.R.A.(N.S.) 874, 130 Am. St. 558; Hyde v. Wrench, 3 Beav. (Eng.) 334. It was not in writing in this case. Where a contract within the statute of frauds is made out by correspondence, the correspondence taken together must establish the contract in all its terms. It can receive no aid from parol evidence. Jenness v. Mount Hope Iron Co. 53 Me. 20. A parol agreement to deal on the basis of a rejected offer is of no avail. After the contract had once expired, it could not be resuscitated by parol, any more than it could have been originally created by parol. This position would be too clear to admit of question if, instead of a few days, a few years had intervened between the expiration of the written contract and the attempt to revive it. Upon principle, however, it is evident that the length of time which had elapsed can make no difference in this respect. Davis v. Parish's Representative, Littell's Sel. Cas. (Ky.) 153, 156, 12 Am. Dec. 287.

We hold that no contract was ever made between the parties. It accordingly becomes unnecessary to consider the further questions argued by counsel.

Order affirmed.