# THE MODEL CLOTHING HOUSE AND OTHERS v. JUSTIN L. DICKINSON AND OTHERS.[1]

### July 16, 1920.

### No. 21,871.

**Corporation — by-law — option of corporation to buy stock.**

1. A mutual agreement between all the stockholders of a trading corporation, that whenever a stockholder wishes to sell any of his stock the corporation shall have the exclusive right to purchase it for a period of 60 days after notice of the wish to sell, is valid and not an unlawful restriction on the power of alienation.

**Same — specific performance of such agreement granted, when.**

2. Where stock is sold in violation of such contract to a business rival having notice of it, an action will lie to cancel such sale and enforce specific performance of the contract.

[1] Reported in 178 N. W. 957.

**Decision sustained by evidence.**

    3. The evidence justifies the finding that the sale in controversy was made in violation of such a contract to a business rival having notice of it.

Action in the district court for Hennepin county to annul a pretended sale and transfer of stock of a plaintiff corporation and to assign the stock to plaintiffs upon payment therefor. The case was tried before Steele, J., who made findings and directed judgment in favor of plaintiffs. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*A. B. Darelius,* for appellants.

*A. B. Jackson* and *Lancaster & Simpson,* for respondents.

TAYLOR, C.

The Model Clothing House was duly organized as a corporation under the laws of the state of Minnesota on October 18, 1903, by John L. Lynch, John F. Nicholson, Andrew M. Nordstrom, Justin L. Dickinson and George E. Crist, for the purpose of manufacturing and dealing in clothing and other merchandise in the city of Minneapolis. The capital stock was fixed at the sum of $150,000, divided into 1,500 shares of the par value of $100 each, of which each of the five incorporators took one-fifth, or 300 shares, and paid therefor in full. The management of the company was vested in a board of five directors composed of the five stockholders.

The complaint alleged, the answer of defendants Dickinson and Crist in substance admitted, and the court found, that all the incorporators were practical and experienced clothing men who had been engaged in that line of business in the city of Minneapolis for several years, and that, at the time of incorporating the company

"It was expressly agreed by and between all of said incorporators that they should each take an active part in the business, and that the capital stock of said corporation and the shares representing the same should be held by the said incorporators in equal proportions of one-fifth each, and that neither of them should or would sell or otherwise dispose of any of his shares of said stock to any persons or parties without first giving to

the corporation, or its other stockholders, a written option, for sixty days, to purchase the same at the price and on the terms at which he was willing to sell."

For the purpose of giving effect to this agreement a provision was incorporated in the by-laws which after providing the method of determining the current value of the stock at any given time further provided:

"Stockholders may pledge their stock to each other at their pleasure, but to no one else. No stockholder shall sell, transfer or otherwise dispose of his stock until he shall first notify the secretary in writing of the number of shares he desires to transfer or otherwise dispose of, and the secretary shall then offer the same for sale to the company for sixty (60) days 'at current value,' as provided for in by-laws, which stock, if bought by the company, shall remain in the treasury as the property of the corporation or be disposed of for its benefit to said person or persons as the directors may elect, or it may be divided among the stockholders pro rata, according to the number of shares held by each of them, said offer to be made by the secretary in writing to the president or other managing officer of the corporation, and notice thereof to be given personally or mailed to said stockholder, or left at his place of business or residence, who shall also be notified by the secretary of the acceptance or refusal of said offer by the company, as the case may be. The secretary shall keep a record of such offer and notice and of the acceptance or refusal thereof and certificate that he has complied with the by-laws, and such records shall be evidence thereof in all proceedings that may be thereafter had.

"No stockholder shall be entitled to any rights as such stockholder until he has accepted, adopted and signed these by-laws, and such signature shall constitute the adoption and ratification of and consent to be bound by each and every one of said by-laws and each and every portion thereof. · * * *

"Upon the back of each certificate of stock issued by the company shall be printed the following indorsement:

"Under and pursuant to the by-laws, the stock of this corporation cannot be pledged by the holder thereof to any person or persons except the stockholders therein, and no assignment of this certificate will be valid or

146 M.—24.

will any transfer thereof be made upon the books of the company unless the assignor or holder thereof shall have first offered to sell and transfer said stock to the corporation, and said offer has been refused or sixty days elapsed since the offer was made, nor will such transfer be made until the assignee or purchaser shall first sign the by-laws of said company and consent and adopt the same."

These by-laws were unanimously adopted on November 6, 1903, by the five persons above named, acting in their capacity as stockholders, all of whom subscribed their names thereto. Subsequently these by-laws were also unanimously adopted by the same five persons acting in their capacity as directors. The business of the company was conducted by these five in the manner contemplated by their agreement from the organization of the company in 1903, until August, 1917, when John F. Nicholson died, and his stock and interest in the company passed to his widow, Anna Louise Nicholson. She was substituted in the company in place of her deceased husband, and except for this change the business was continued as before until June, 1919. In June, 1919, Dickinson and Crist sold and assigned their stock to Gustaf Rydell, a competitor in business, for the sum of $100,000, or $50,000 each. Thereupon this action was brought by the corporation and the three other stockholders to cancel and annul the sale and transfer of the stock to Rydell, and to enforce the right of the plaintiffs to purchase it on the same terms on which it had been sold to Rydell.

The trial court made extended findings of fact and conclusions of law, and directed judgment substantially as prayed for by the plaintiffs.

Defendants appealed from an order denying a new trial. Defendants contend that the agreement and by-laws restricting the right to sell and transfer the capital stock of the corporation are void.

It is true that ordinarily a stockholder has the right to dispose of his stock as he sees fit, and that his right to do so cannot be impaired by a by-law adopted after his rights accrued and to which he has not assented. It is also doubtless true that an agreement which, in effect, prohibits the sale of stock except to the corporation or its stockholders, or to persons approved by them, is void, unless it imposes an obligation on those eligible as vendees to purchase the stock, when offered, at the price for which

it can be sold to others, or at a price agreed upon or to be determined in some prescribed manner. But a stockholder may give an option for the purchase of his stock as well as for the purchase of any other property. And we see no reason why stockholders may not mutually contract with each other that, whenever any of them wishes to sell stock, the others, or the corporation, shall have the exclusive right, or option, to purchase it during a limited time after notice of the wish to sell. Such an agreement is not an invalid restriction on the power of alienation, and has been held binding and enforceable by several courts. Farmers M. & S. Co. v. Laun, 146 Wis. 252, 131 N. W. 366; Casper v. Kalt-Zimmers Mnfg. Co. 159 Wis. 517, 149 N. W. 754, 150 N. W. 1101; Weiland v. Hogan, 177 Mich. 626, 143 N. W. 599; New England Trust Co. v. Abbott, 162 Mass. 148, 38 N. E. 432, 27 L.R.A. 271; Barrett v. King, 181 Mass. 476, 63 N. E. 934; Nicholson v. Franklin Brewing Co. 82 Oh. St. 94, 91 N. E. 991, 137 Am. St. 764, 19 Ann. Cas. 699; Fitzsimmons v. Lindsay, 205 Pa. St. 79, 54 Atl. 488; Moses v. Soule, 63 Misc. 203, 118 N. Y. Supp. 410, 136 App. Div. 904, 120 N. Y. Supp. 1136.

The agreement in the present case leaves the stockholder free to sell to whomsoever he chooses after the expiration of 60 days from the time he gives the prescribed notice, unless, within that period, the corporation purchases the stock for its own benefit or on behalf of the other stockholders. This provision was adopted and agreed to by all the stockholders at the organization of the corporation, and entered into and became a part of the contract under which the stock was issued and held, and we are of opinion that it is valid, binding and enforceable.

Defendants urge that the provision prohibiting the pledging of stock, except to other stockholders, is absolute and hence invalid. It is not necessary, at this time, to determine whether this provision is valid or invalid, for, if invalid, it would not invalidate the provision on which the present action is predicated.

Defendants cite Northern Trust Co. v. Markell, 61 Minn. 271, 63 N. W. 735, and Moulton v. Warren Mnfg. Co. 81 Minn. 259, 83 N. W. 1082, in support of the contention that plaintiffs' remedy is an action at law for damages, and not an action in equity to cancel the sale and enforce their preference right to purchase. A corporation, as a matter of busi-

ness prudence, may legitimately desire to keep its stock in the hands of those who are congenial and will work together for the success of the enterprise, and to that end may protect itself, in proper ways, against the acquisition of its stock by disturbers, rivals in business, or other outsiders who might not be congenial and might purchase the stock to acquire information which might be used to the disadvantage of the company. Farmers. M. & S. Co. v. Laun, supra; Moses v. Soule, supra. The instant case sufficiently shows such a situation and that a recovery in damages will not afford an adequate remedy. Although the facts are different, the case falls within the rule applied in Selover v. Isle Harbor Land Co. 91 Minn. 451, 98 N. W. 344; First Nat. Bank of Hastings v. Corporation Securities Co. 128 Minn. 341, 150 N. W. 1084; and Nason v. Barrett, 140 Minn. 366, 168 N. W. 581.

Defendants also contend that Dickinson and Crist complied with the contract by offering their stock to the corporation before selling it to Rydell. The court found the fact against them. In August, 1917, Crist gave notice that he intended to sell and that he offered 300 shares of the Model Clothing House and 400 shares of the Standard Clothing Company for the sum of $100,000. The Standard Clothing Company was another corporation engaged in business at a different place in the city, which seems to have been organized and operated by these same parties. The evidence justified a finding that Crist's proposition was withdrawn or abandoned by mutual agreement, and the court in effect so found. But, even if it had not been withdrawn, the offer was not a compliance with the contract, for it required the corporation, if it purchased, to take the stock of both corporations at the lump sum of $100,000. Dickinson, who was secretary of the company, claims that after Crist's proposition was presented, he made out a similar proposition for himself and as secretary kept it in his office. As this offer seems not to have been communicated to any of the other parties in interest it was of no effect. It is true that both Dickinson and Crist had conferences with the other stockholders in respect to the sale of their stock at various times in 1917 and later, and that the others urged that the war made conditions too uncertain to either buy or sell at that time. Both Dickinson and Crist seem to have acquiesced in this view, and neither pressed the matter to a point

which required the others to determine whether they would or would not purchase. The finding that they had not complied with the requirements of the contract was justified by the evidence.

The finding that Rydell made his purchase with full notice of the facts is also amply supported by the evidence. The certificates of stock assigned to him had printed thereon the provisions which the by-laws required to be printed thereon, and in addition to this notice he had also been notified personally of the requirements of the contract and that Dickinson and Crist had not complied with them.

The order for judgment made careful provision for securing and protecting the rights of all the parties, and the propriety of the form and terms of the judgment directed to be entered is not questioned. Order affirmed.