HUGH JAMESON, Administrator, Appellee, v. JOINT DRAINAGE
DISTRICT No. 3 et al., Appellants.

**DRAINS:** Conditional Acceptance of Bid. An acceptance of a bid
on condition that the bidder do something not required by the
statutory publication for bids, or something which the bidder has
not agreed to do, *is no acceptance.*

*Appeal from Wright District Court.*—R. M. WRIGHT, Judge.

JUNE 25, 1921.

ACTION in equity, commenced by J. H. Salisbury, to re-
strain the defendant boards of supervisors from enforcing the
collection of, and the defendant bank from paying, two checks
for $5,000 each, drawn by him and payable to "county auditor
or order," upon the Farmers State Bank of Dows, Iowa, and
duly certified by said bank. While the action was pending in
the court below, Salisbury died, and Hugh Jameson, administra-
tor of his estate, was substituted as plaintiff. The defendant
boards of supervisors, acting for and on behalf of Joint Drainage
District No. 3, of Dickinson and Osceola Counties, filed a cross-
petition, asking judgment against the defendant bank on the cer-
tified checks which were deposited by Salisbury with his bid for
the contract to construct certain drainage improvements contem-
plated by said joint boards. Issue was joined on the cross-peti-
tion, and a trial had upon the merits. The court dismissed the
defendants' cross-petition, and entered a decree in favor of
plaintiff, releasing the drawer and the defendant bank from
liability on said checks. Cross-petitioners appeal.—*Affirmed.*

*W. C. Garberson* and *Francis & Owen,* for appellants.

*Jno. M. Hemingway* and *Birdsall, McGrath & Archerd,* for
appellee.

STEVENS, J.—The boards of supervisors of Dickinson and
Osceola Counties, on or about October 3, 1916, acting jointly,

approved the commissioners' report of the preliminary survey thereof, and established a drainage district to be known as Joint Drainage District No. 3. The contemplated improvement consisted of open ditches and main tile and numerous branch tile drains. Notice for bids in the usual form and manner was given by publication, permitting bids to be filed in the office of the county auditor at Sibley, Iowa, any time before 11 o'clock A. M., on December 12, 1916. Numerous bids were filed. The material portion of the published notice for bids was as follows:

"Bids will be received on the above as a complete job, or on any part of the same. All bids must be accompanied by certified check for 10 per cent of the amount of the bid. Deposits of the unsuccessful bidder to be returned promptly after contract is awarded."

Salisbury's proposal was as follows:

"Sibley, Iowa, Dec. 12-16.

"To the Honorable Boards of Supervisors, Dickinson, Osceola Counties, Iowa:

"Gentlemen:

"I herewith submit bid on Joint Drainage District No. 3, for your consideration, as advertised in notice of letting inclosed. I will construct the open ditch, furnish all material for tile drains, lay the tile and fill the ditch, furnish material and construct all bulkheads and inlets as advertised for the sum of $180,575 (one hundred eighty thousand five hundred seventy-five dollars). This bid is for the job complete. If awarded contract I will furnish an itemized statement of each section for both labor and material. Eighty per cent of the price of the tile to be paid when it is delivered along the line of the ditch and the open ditch to be accepted and paid for in full when completed.

"I inclose checks for $10,000 and schedule of over depth. This bid and schedule to be a part of contract if I am awarded same.

"This bid contemplates the use of best quality cement tile."

Inclosed with his bid were the two certified checks for $5,000 each, as above stated. The bids were opened by the joint boards on December 12, 1916, and all except the bid of J. H. Salisbury were rejected. The action taken by the joint boards on said date, as shown by the original record kept by the county auditor of Osceola County, which has been certified to this court for our examination, reads as follows:

"On motion the bid of J. H. Salisbury, of Dows, Iowa, was accepted on his proposal to complete the district for $180,575, providing, however, that the said Salisbury furnish an itemized schedule of prices separately for the main drain and each of the laterals, the tile drains to comprise Section 1 and the open ditch to comprise Section 2, subject to the approval of the engineer and in accordance with the permanent survey now being made by said engineer, and the county auditor of both counties and the chairman of the boards of supervisors of both counties (*who*) are authorized to contract with the said J. H. Salisbury after all details have been complied with as by law made and provided. On motion the county auditor of Osceola County was instructed to advise with W. C. Bargerson of Sibley, Iowa, in drawing up a proper contract for the construction of all of the improvement in Joint Drainage District No. 3.

"On motion the boards adjourned," etc.

Salisbury neglected or refused to enter into a contract, or to furnish bond, as required by law; and later, the joint boards advertised for bids and let the contract for a sum approximately $13,000 in excess of the Salisbury bid. The point of contention between the parties is as to whether the acceptance of the Salisbury bid was absolute and unconditional, or qualified and conditional. The law is well settled that an acceptance of a bid or proposal to enter into a contract, to be binding upon the parties, must be absolute and unconditional. *Foshier v. Fetzer,* 154 Iowa 147; *Goodenow v. Barnes,* 40 Iowa 561; *Batie v. Allison,* 77 Iowa 313; *Cedar Rapids Lbr. Co. v. Fisher,* 129 Iowa 332; *Coad v. Rogers,* 115 Iowa 478; *El Reno Wholesale Groc. Co. v. Stocking,* 293 Ill. 494 (127 N. E. 642); *Melick v. Kelley,* 53 Neb. 509 (73 N. W. 945); *Lewis v. Johnson,* 123 Minn. 409 (143 N.

W. 1127); *Wheaton Bldg. & Lbr. Co. v. City of Boston,* 204 Mass. 218 (90 N. E. 598).

The following further extract from the record of the proceedings of the joint boards had on January 4, 1917, is essential to a complete understanding and presentation of the proposition under discussion:

"Whereas, at a meeting of said joint boards of supervisors held at Sibley, Iowa, on the 12th day of December, 1916, for the purpose of letting contract for the construction of the improvements in Dickinson-Osceola Counties Joint Drainage District No. 3, one J. H. Salisbury, of Dows, Iowa, by his written bid on file in the office of D. W. Clayton, county auditor, which is hereby referred to and by reference made a part hereof, offered to complete said drainage district in accordance with all and singular maps, plans and specifications being on file in the office of the county auditor of each of the above-named counties and by reference are made a part hereof, at and for the aggregate sum of one hundred eighty thousand, five hundred seventy-five dollars ($180,575), and depositing his two certain checks dated December 11, 1916, for the sum of five thousand dollars ($5,000) each, payable to county auditor, said checks purporting to have been duly certified by the Farmers State Bank, of Dows, Iowa, the bank upon which the same were drawn, as a condition precedent to said bid, and the said Salisbury having further promised and agreed to provide said county auditor with an authorized schedule of prices of the several components, main laterals, tile lines, etc. of Section One (1), and open ditch comprising Section Two (2), subject to the approval of the engineer in charge and in accordance with the permanent survey made by the engineer in charge and the county auditors and the chairman of each of said boards of supervisors, and said bid and offer having been considered the best bid and offer therefor, and said joint boards of supervisors having conditionally accepted said bid upon the conditions aforesaid. * * *

"Be it resolved, That, in the event the said J. H. Salisbury shall fail to furnish the schedules, the bond, and enter into the contract according to the true spirit and intent of said bid, offer and acceptance on or before the 12th day of January, A. D.

1917, then the county auditors of Dickinson and Osceola Counties, Iowa, are hereby authorized and directed to institute legal proceedings for the recovery of actual liquidated damages provided by law by reason of the failure of said bidder, J. H. Salisbury, to enter into a contract with said boards of supervisors for and on behalf of said Joint Drainage District No. 3 of said counties as by said bid and offer contemplated, * * *''

First, it will be observed that the published notice for bids allowed proposals to be made for the complete job, or for any part thereof. Salisbury's bid was for the improvement complete, which included the furnishing of all material and labor therefor, and was for the sum of $180,575. The published notice did not require bidders to furnish an itemized schedule of prices separately for the main drains and laterals. Salisbury, however, offered to furnish an itemized statement of the cost of each section of both labor and material, and included with his bid a schedule of prices for overdig. The joint boards divided the improvement into Section 1, which comprised the tile lines, and Section 2, which comprised the open ditches. It is conceded that the Salisbury bid was the lowest, and it was then evidently believed that he had complied in all respects with the law, and with the terms of the notice, so far as the filing of a deposit was necessary; but it was later claimed by the board- -and the record so shows—that no ·funds of the drawer were set apart by the bank, at the time of the certification of the two $5,000 checks; but this is now immaterial. A motion was offered by a member of the joint assembly to accept Salisbury's bid. This motion is not set out in the record verbatim, but the minutes of the meeting, kept by the county auditor of Osceola County and quoted above, it may be assumed, show the action of the joint boards correctly. The acceptance of the bid by the joint boards was coupled with a proviso, to wit: "That the said Salisbury furnish an itemized schedule of prices separately for the main drain and each of the laterals," same to be "subject to the approval of the engineer and in accordance with the permanent survey now being made by the said engineer." In other words, the purported acceptance of the bid was upon condition that the bidder do something not required by the notice to bidders, nor

by the terms upon which the bids were solicited.   There is some contention between counsel as to whether the word ''who,'' inclosed in parenthesis and italicized in the quotation from the minutes of the proceedings of June 12th, was included therein; but, in view of our conclusion, we deem this contention immaterial.   Apparently, its insertion was an error upon the part of someone making a copy thereof for the abstract or use at the trial.   The reference by Salisbury, in his proposal, to a schedule is to the one inclosed therewith, and relates only to the prices to be charged for overdig, and clearly does not refer to the schedule of prices which the board required him to furnish, subject to the approval of the engineer.   As shown by the portion of the minutes of the joint meeting of the two boards on January 4, 1917, quoted above, they interpreted their acceptance as having been qualified and conditional, and it is so stated therein. The requirement of Section 1989-a8 of the Supplemental Supplement to the Code, 1915, requiring a deposit by bidders in drainage matters, is as follows:

''Each person bidding for such work shall deposit in cash or certified check a sum equal to 10 per centum of the amount of the bid, not in any event, however, to exceed $10,000, said deposit to be returned to him if his bid is not successful, and if successful to be retained as a guarantee only of his good faith in entering on said contract.''

Under the foregoing provision of the statute, the right to retain the deposit of the bidder exists only when his bid was successful and has been accepted.   If the acceptance is qualified or conditional, or adds materially to the terms of the published notice for bids, it does not bind the bidder, at least until he has unconditionally accepted the same, and agreed to comply therewith.   New conditions imposed by the terms of the boards' acceptance are in the nature of counter proposals.   The bid of Salisbury was successful, and was accepted, provided he furnished the schedule of prices demanded and same were approved by the drainage engineer.   This form of acceptance did not bind the joint boards; and manifestly, if Salisbury had tendered, for the approval of the boards, a contract and bond in strict conformity with the terms of his proposal, but without a schedule of prices, as demanded, they would have been rejected.

The requirement that Salisbury furnish a schedule of prices, as provided in the alleged acceptance of his bid, was evidently deemed a material one by the boards; as, in their proceedings on January 4th, granting him an extension of time to comply therewith, they again made it a condition precedent to the final acceptance of his bid. Indeed, the action of the joint boards on January 4, 1917, must be treated as a specific rejection of his bid, unless a schedule of prices satisfactory to the engineer was furnished on or before January 12th, together with a bond, as required by law. The joint boards did not bind the bidder by originally accepting his offer conditionally, nor by making the condition a ground for rejection thereof, if not fully complied with by a date fixed. Manifestly, the board's acceptance was qualified and conditional, and therefore the auditors of the respective counties were not entitled to retain certified checks for $5,000 each. They should have been returned to Salisbury when his bid was finally rejected. The decree of the court below, directing the cancellation thereof and releasing the bank from liability thereon, was right, and it is, therefore,—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.