# WILLIAM WEST v. FIRST NATIONAL BANK OF ROLFE.[1]

November 20, 1925.

No. 24,916.

**Letter was not an offer to buy.**

1. A letter, continuing previous oral negotiations concerning the purchase of a mortgage, proposed "to take over the deal," under stated conditions, the latter, however, not saying just what was to be taken over. *Held*, under the circumstances stated in the opinion, that the letter was not an offer to buy the mortgage.

[1]Reported in 205 N. W. 949.

**Counter offer.**

    2. An offer to contract is rejected by a counter offer. An attempted acceptance, accompanied by a condition not within the terms of the offer, amounts to a counter offer.

    1. See Mortgages, 27 Cyc. p. 1282 (Anno).
    2. See Contracts, 13 C. J. p. 281, § 86.

    2. See note in L. R. A. 1915D, 145.

Action in the district court for Yellow Medicine county for damages for breach of contract. The case was tried before Baker, J., who ordered judgment in favor of defendant. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Lee & Lee* and *Bert O. Loe,* for appellant.

*Freeman & Smith* and *H. P. Bengtson,* for respondent.

STONE, J.

Action to recover damages for the breach of an alleged contract for the purchase by defendant from plaintiff of a real estate mortgage. After a trial without a jury and a decision for defendant, plaintiff appeals from the order denying his motion for a new trial.

The mortgage secured a note for $12,400 and covered a Yellow Medicine county farm. Ahead of it were two mortgages which, with interest then delinquent, approximated $13,000. Defendant held a fourth and last mortgage for $3,000. In addition, and taking precedence over all of the mortgages, were a ditch assessment of $7,080 and delinquent taxes of over $1,100. Foreclosure of one of the senior mortgages being imminent, plaintiff's attorney initiated negotiations with defendant, by a letter of October 23, 1922, offering to sell plaintiff's $12,400 mortgage for $10,000. The correspondence continued without anything at all definite until, on December 5, defendant wrote to plaintiff's attorney in part as follows:

"I have been delayed in writing you, * * * the directors are reluctant to give me their decision. I have figured the proposition over and the estimates on land values that I got out there were all the way from $65 to $115 per acre, and from these two sources I

have concluded that if Mr. West would endorse $9,400 and interest to Oct. 1, 1923, on his mortgage, I am quite sure the directors would let us take over the deal. This looks like quite a reduction for Mr. West but I am listing my figures below and as you will see, even at that it would be costing us better than $85 per acre without any claim for our interest or costs of foreclosure."

After tabulating the encumbrances and showing that they amounted to over $85 an acre, the letter concluded thus: "Kindly let me know what Mr. West decides to do about this."

Mr. West did not decide anything promptly and after another letter or so, Mr. Lee, his attorney, visited defendant's president somewhere between December 12 and 15. There Mr. Lee made a counter offer, to the effect that Mr. West would sell his mortgage for $6,000.

The effect of the counter offer was to reject whatever offer of the defendant was then outstanding. Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L. R. A. 1915D, 150. We do not find in the correspondence that followed a renewal of defendant's original proposition—there was none so definite that an unqualified acceptance would have completed a contract. But, were it otherwise, defendant's original proposition was not an offer to *buy* the mortgage for $3,000. It only indicated a willingness, subject to the approval of defendant's directors, to "take over the deal," if plaintiff would reduce the amount of the mortgage indebtedness due him by indorsing thereon $9,400 and interest to October 1, 1923. What was the "deal" thus to be taken over? The phraseology is indefinite; as much open to defendant's construction, that it referred to taking over the farm by a foreclosure of defendant's mortgage, subject to the prior mortgages including plaintiff's at the reduced figure, as it was open to the interpretation by plaintiff that it was an offer of $3,000 for the mortgage. If it were the latter, it would remain somewhat incomplete still, in that it did not specify the manner in which the mortgage note should be indorsed.

If the letter was not an offer, it could not be converted into one by the rejoinder of plaintiff's attorney which characterized it as an

offer of $3,000 for his client's mortgage. But all else aside, and proceeding to the letter which plaintiff claims was an acceptance of the alleged offer, we find in it a material condition not found in the original offer and which thereby converted the acceptance into a counter offer. The letter in question was written December 18, 1922, by Mr. Lee, acting for plaintiff, to defendant. It begins with the statement that Mr. West "has concluded that it will be necessary for him to take your original offer of $3,000." Treating that as an attempted acceptance, we find it conditioned in the concluding paragraph of the letter thus: "The note will be endorsed by Mr. West without recourse and if you have any objection to that, please advise me." That such a new condition, not in compliance with but entirely outside the terms of the offer, converts an attempted acceptance into a counter offer which rejects the original offer and thereby causes it to lapse, is elementary. Lewis v. Johnson, supra.

There is nothing in the subsequent correspondence between the parties to change the situation and the resulting conclusion of the learned trial judge that no contract was ever entered into is right.

Order affirmed.