# HENRY SIMONS LUMBER COMPANY v. E. J. SIMONS.[1]

November 17, 1950.

No. 35,240.

*Cronin, Mitchell & Spooner,* for appellant.
*Odell & Odell,* for respondent.

LORING, CHIEF JUSTICE.

This is an action to compel specific performance of a contract relating to the sale of corporate stock. Findings and order for judgment were for plaintiff. Defendant moved for amended findings and conclusions of law or in the alternative for a new trial. Both motions were denied. The case is before this court on appeal from the whole order denying the alternative motions.

This suit is by a Minnesota business corporation against one of its common shareholders. Of 3,984 common shares outstanding

[1]Reported in 44 N. W. (2d) 726.

at the time herein material, defendant held 743. Plaintiff is a "family corporation," all its common shares being owned by defendant, his brothers, and his father's estate. On May 18, 1935, plaintiff and its common shareholders entered into and duly executed a written contract wherein the common shareholders as parties of the first part and plaintiff as party of the second part, in consideration of their mutual promises, agreed to detailed provisions governing the sale of common stock by the individual shareholders. The essence of this agreement is that before any common shareholder can sell his stock to an outsider he must first offer the stock to plaintiff, which shall have what amounts to a right of first refusal. After a refusal by plaintiff, the selling shareholder must then give a right of first refusal to the other common shareholders. Upon their refusal, he may then sell to an outsider. The exact provision of the agreement, which is important in the present case, reads as follows:

"It is further agreed that in the event that any holder of any of the common shares of Henry Simons Lumber Company desires to dispose of the same or any part thereof, he shall not transfer or dispose of the same to any person, firm, or corporation unless or until he has first complied with the provisions hereof, and given to the party of the second part and to the remaining first parties an opportunity to purchase the stock as herein provided."

The contract makes the following provisions for fixing the sale price of stock sold under the agreement:

"The purchase price of said stock shall in all cases be the fair value of said shares as mutually agreed upon by and between the parties, but in the event that the fair value of said shares cannot be mutually agreed upon by and between the parties, then said purchase price shall be fixed and determined as being the book value of said shares on the December 31st immediately preceding the date when said shares are purchased, less any dividends declared since said December 31st."

There are other detailed provisions in the agreement which, although important in other respects, are not pertinent in this case. The above-described agreement relates only to the common stock of plaintiff.

By a letter of March 19, 1948, defendant offered to sell his 743 shares of common stock in plaintiff and his one share of stock in Simons, Inc., a subsidiary of plaintiff, at prices of $224 and $124.53 respectively.[2] By a letter of March 30, 1948, plaintiff and its subsidiary replied to defendant's letter with a counteroffer to buy defendant's common stock in plaintiff and in the subsidiary at prices stated therein to represent "book value."[3] On April 20, 1948, a meeting was held at which the officers and directors of plaintiff[4] met with defendant. The matter of defendant's offer to sell his

---

[2]See letter p. 192, *infra.*

[3]"E. J. Simons:

"Your offer of selling your common stock in Henry Simons Lumber Co. and Simons, Inc., has been given due consideration by the Board of Directors.

"We hereby offer, as per signed agreement of May 18, 1935, book value of $170.84 per share for Henry Simons Lumber Co. stock and book value of $124.53 per share for Simons, Inc., stock now on record in your name on corporation books.

"Payment in full for stock and delivery of same to be made within 30 days of March 19, 1948.

"Henry Simons Lumber Company
"Simons, Inc.
"By A. H. Simons
L. R. Simons
Henry Simons, Jr.

"Accepted:
_____"

Since plaintiff's letter above states terms of sale differing from defendant's offer, it is a counteroffer, and by well-established rule is an implied rejection of the offer. West v. First Nat. Bank, 165 Minn. 143, 205 N. W. 949; Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L. R. A. 1915D, 150; Johnson v. M. J. O'Neil, Inc. 182 Minn. 232, 234 N. W. 16; Crabtree v. St. Paul Opera-House Co. (C. C.) 39 F. 746.

[4]Although defendant was also a member of the board of directors of plaintiff, he did not act in that capacity in any of the negotiations which led to the present dispute.

stock to the corporation was discussed at this meeting. Defendant opened the discussion by saying that he was not satisfied with the offer in plaintiff's letter of March 30. The president of plaintiff, Mr. Alex H. Simons, told defendant that the price offered in the letter of March 30 was "book value." Mr. L. R. Simons, vice president of the corporation, told defendant that plaintiff was offering book value and that he could "take it or leave it." Defendant then left the meeting.

July 20, 1948, the board of directors of plaintiff met and passed a resolution to tender to defendant the book value of his stock in plaintiff and to demand that he assign this stock to plaintiff pursuant to the 1935 agreement. July 27, 1948, in accordance with this resolution, plaintiff tendered to defendant the price of $170.84 per share for his common stock in plaintiff, or a total of $126,934.12 for the 743 shares. Defendant refused this tender and refused to surrender his stock. Plaintiff then brought the present action on the theory that the two letters referred to above constitute an offer to sell and a notice of election to purchase under the provisions of the agreement entered into in May 1935. Relying on these letters as placing the 1935 contract in operation, plaintiff seeks specific performance of the agreement with reference to defendant's 743 shares of common stock.

In this case, counsel on both sides have devoted a great amount of time and space in their oral arguments and briefs to a discussion of whether the 1935 agreement is or is not invalid as an unreasonable restraint on alienation of corporate stock. Because of ambiguities in the agreement, this matter is fairly debatable. Those provisions of the agreement which specify proceedings to be taken after a shareholder has made an offer to sell under the agreement are so far ambiguous that it is left uncertain as to how long the corporation can restrict the alienation of the offered shares before it must make a final binding commitment to purchase. We do not, however, consider it necessary or desirable to resolve these ambiguities and to pass upon the validity of the agreement in this decision,

since we have decided that the negotiations involved in this litigation were entirely outside the 1935 agreement.

■ At the outset, it will be helpful to recognize that the manifest purpose of the 1935 agreement, as stated in the briefs of both parties, is to preserve to the Simons family the ownership of the common stock in plaintiff corporation. The agreement manifests no design to serve as a method whereby any of the shareholders can be forced to sell their shares for a consideration less than they are willing to accept. The agreement was obviously designed to prevent a sale to an outsider so long as the corporation or its remaining shareholders were willing to buy at an agreed fair value or at book value. So long as a shareholder is unwilling to sell for the price offered by plaintiff, be it book value or otherwise, no purpose of the agreement calls upon the shareholder to sell. By the terms of the agreement, shareholders are precluded from selling to an outsider until such time as they have made an offer to the corporation and its other shareholders and such offer is made in terms of the agreement. Therefore, no purpose of the agreement is defeated if a shareholder makes an offer not in accordance with the agreement and the corporation or its shareholders reject such an offer expressly or by counteroffer. A leading decision in this state on agreements of the kind involved in this case holds that unless a shareholder makes an offer to the corporation within the provisions of the agreement a rejection of the offer or failure to accept it does not entitle the offering shareholder to sell to an outsider, and that any sale made under such circumstances can be set aside as against a non-bona-fide purchaser of the stock with notice of the agreement. Model Clothing House v. Dickinson, 146 Minn. 367, 178 N. W. 957.

With these considerations in mind, we turn to the specific negotiations which have taken place in this case. The letter relied upon by plaintiff as constituting an offer by defendant to sell under the 1935 agreement, so far as it is pertinent here, reads as follows:

"Henry Simons Lumber Company
Minneapolis, Minnesota

"Gentlemen:

"I hereby submit my proposition on the value of the Common Stock I hold in the Simons, Inc. and Henry Simons Lumber Company as of December 31, 1947 for your consideration.

"The value proposed is fair and just to all concerned and I will surrender my stock on this basis. [Then follows a mathematical computation of the share value of stock in the two corporations.]

"If we cannot agree on the value of plants, etc., I will agree to select an experienced lumberman to act as appraiser and you to do likewise; then, if they cannot agree they to select a thrid [*sic*] party and their decision to be final."

As we interpret defendant's letter, it contains a statement of the basis on which he was willing to surrender his stock in the two corporations, one of which was not covered by the 1935 agreement.

It is clear from defendant's letter that he did not make an unconditional offer to sell his stock with a mere suggestion as to price, as plaintiff contends. We need look only to the words "I will surrender my stock on this basis" to determine that defendant was not offering to sell his stock in any event, but only in the event that he could sell on the basis stated in his letter. Certainly, he was entitled to negotiate to determine whether he could sell to the corporation on terms satisfactory to him and, in the course of negotiations, to state the basis on which he would be willing to sell. If he could not reach an agreement with plaintiff as to the value of his stock, he was entitled to keep it. Plaintiff's vice president expressed defendant's rights correctly and concisely during the negotiations which followed the exchange of letters between defendant and plaintiff. He said that plaintiff was willing to pay book value and that defendant could "take it or leave it." Plaintiff cannot be allowed to seize upon defendant's first mention of willingness to sell and, in complete disregard of the terms of the offer, treat it as an offer to sell under the 1935 agreement. Nothing in the language or purpose

of the agreement calls for such a harsh result, and we will not give the agreement such a construction in the absence of a more explicit provision to that effect.

Now, since plaintiff cannot treat just any offer or any negotiations looking toward a sale as an offer within the 1935 agreement, the question presented is whether defendant's letter can be construed as an offer within the agreement. A mere reading of defendant's letter discloses that it was not an offer in terms of the agreement, because it differed from the offer required by the agreement in two material respects. First, it was not an offer to sell at "book value" in the absence of agreement on price. One basis of defendant's offer was that, in the absence of agreement, price be determined by third-party appraisal. This was more than an offer with a suggestion as to price. Although a price was suggested, the whole offer was conditioned upon a method of price fixing which differed from that prescribed in the agreement. Second, defendant's offer was to sell stock covered by the agreement, with a tie-in sale of stock not covered by the agreement, namely, the share in Simons, Inc. Since the price of the two kinds of shares was stated separately in defendant's offer, plaintiff contends that defendant's letter contained two separate offers, either of which could be accepted alone. Plaintiff has cited no rule of law in support of this contention, and the court has found none. There is some law bearing on the subject of severability of contracts. Whether a contract is severable is said to depend, as in other contract matters, upon the intention of the parties.[5] A separate statement of price or other consideration is one basis for determining the intention of the parties in the absence of an expressed intention or intention otherwise indicated.[6] Because of strict rules governing offer and acceptance, which require that

[5]Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 636; E. Edelman & Co. v. Queen Stove Works, Inc. 205 Minn. 7, 284 N. W. 838.

[6]In some cases a separate statement of price makes a contract severable (cf. Spear v. Snider, 29 Minn. 463, 13 N. W. 910), but in others it does not. Cf. Johnson v. Fehsefeldt, 106 Minn. 202, 118 N. W. 797, 20 L.R.A.(N.S.) 1069.

an acceptance be in terms of the offer,[7] we are reluctant to follow by analogy rules laid down with respect to contracts already formed. In passing upon questions of offer and acceptance, courts may wisely require greater exactitude than when they are trying to salvage an existing contract. Where no contract has been completed and neither party has acted to his detriment, there is no compulsion on a court to guess at what the parties intended. In the present case, we can only speculate as to whether defendant intended to make two separate offers. Where a shareholder has offered to sell stock in a parent and a subsidiary at the same time, we think it an unsafe assumption that he would be willing to sell his interest and control in the parent unless he could at the same time sell his interest in the subsidiary. There is some indication in the record that defendant did at one time try to trade his stock in the parent for stock in the subsidiary, but there also we can only speculate as to his intention. It may have been that he might have gained control of the subsidiary by the trade.

From the foregoing discussion, it can readily be seen that the court has no reliable indication of what defendant intended regarding the severability of his offer. In the absence of a more specific indication that defendant intended to make two separate offers, we must follow the rules governing offer and acceptance, which require that the offer be accepted according to its terms.[8] This means that it cannot be accepted in part and rejected in part and that any time one of plaintiff's shareholders makes a non-severable offer to sell stock covered by the 1935 agreement and stock not so covered the offer will be regarded as outside the agreement, and, upon rejection of such an offer, the shareholder still will not be entitled to sell to an outsider. This result is completely in accord with what this court has already held in the case of Model Clothing House v. Dickinson, 146 Minn. 367, 178 N. W. 957. There, the shareholder, bound by a similar restrictive agreement enacted

---

[7]Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690; Johnson v. M. J. O'Neil, Inc. 182 Minn. 232, 234 N. W. 16.

[8]See footnote 7, *supra*.

into the bylaws, offered to sell, at a lump sum price, stock covered by the agreement and stock not covered by it. The court there held that the offer was outside the agreement because it required the corporation, if it purchased, to take the stock of both corporations at the lump sum of $100,000. Plaintiff here has attempted to distinguish the Model case by pointing out that the offer in that case priced the stock at a lump sum, whereas in the present case the stock was priced separately. This we regard as an immaterial distinction. The broad general rule laid down in the Model case is that an offer which requires acceptance on terms differing from those in the agreement is outside the agreement and not a compliance with it. It is immaterial that defendant's offer was not foursquare with the offer in the Model case. So long as it required acceptance on terms differing from the agreement, either because of the tie-in sale or the method of price fixing, it must be regarded as an offer outside the agreement under the rule laid down in the Model case.

■ Plaintiff next contends that, even though the offer is outside the agreement, the Model case does not hold that an offer made outside the agreement cannot be accepted as one made under the agreement. Plaintiff contends that the lump-sum price in the Model case was the only thing that prevented such an acceptance. What plaintiff failed to note was that the agreement in that case contained a price-fixing provision similar to the one in the present case. The agreement involved in the Model case provided that price would be fixed at "current value," and "current value" was described in terms which indicate that it was roughly what is designated as "book value" in the present agreement. Therefore, if the rule which defendant urges here had been applied in the Model case, the Model corporation would have been entitled to ignore the terms of the offer and to respond to the shareholder's letter by offering "current value" for the Model corporation stock, and the shareholder would have been required to sell. If plaintiff's theory were correct and had it been followed in the Model case, the court could not have held that the offer was outside the agreement, because the

corporation would have been entitled to accept the offer in terms of the agreement. It seems perfectly clear, therefore, that when the court held that the offer was outside the agreement it subsumed the well-recognized rule that acceptance must be in terms of the offer. If the court had not made this assumption, it would not have spoken of what the offer required. If plaintiff's theory were followed, no offer to sell stock covered by a restrictive agreement could fail to be in accordance with the agreement, because acceptance would, in all cases, cure the defect in the offer.

In light of the foregoing, we conclude that defendant's offer was outside the 1935 agreement; that plaintiff's counteroffer could not and did not bring defendant's offer within the agreement; that plaintiff's counteroffer was an implied rejection of defendant's offer; and, consequently, that plaintiff's suit for specific performance of the 1935 agreement should have been denied.

Order reversed with directions to enter judgment for defendant.

