MAURICE D. BAUMOHL and HAROLD W. DANSER and the
LONG BRANCH STEAMBOAT COMPANY, a corporation,
complainants,

*v.*

MILTON J. GOLDSTEIN and MARGUERITE D. EISNER, defendants.

[Submitted February 25th, 1924.    Decided March 20th, 1924.]

1. The by-laws of a corporation may be enforced as a contract between the corporation and its stockholders and between the latter *inter sese.*

2. The right of a stockholder to sell his stock cannot be defeated by any provision contained in the by-laws of a corporation.

3. Where the by-laws of a corporation provide that the "right to assign or transfer the common stock of the company shall be subject to the company's option to purchase from the stockholder of record within twenty days on written notice of the desire of said stockholder to sell, assign or transfer the same" this does not amount to a restriction on the power of sale, but is an agreement under which he holds his stock and is enforceable as an option.

On bill, &c.   On order to show cause why a preliminary injunction should not issue.

*Messrs. Treacy & Milton,* for the complainants.

*Mr. William L. Edwards,* for the defendants.

BENTLEY, V. C.

This is a bill filed by certain stockholders of the Long Branch Steamboat Company and that corporation itself, to establish a trust in certain shares of stock, for a transfer thereof from one of the defendants to the corporation, and to enjoin the voting, transferring, &c., thereof.   The defendants also counter-claim with many charges, of no moment

in the decision of this motion, praying that the said shares of stock be decreed to be transferred on the books of the company, together with a temporary injunction.

The company was organized in 1919 with two hundred and fifty shares of common stock authorized, whereof two hundred and forty have been issued and are now outstanding, and which are invested with the control of the company, the preferred stock being of the ordinary sort having no voting power. Originally, the common stock was held by five individuals of whom the complainants Baumohl and Danser, the defendant Goldstein, and one J. Lester Eisner, each held fifty shares, and one Joseph Goldstein forty shares.

The by-laws of the company provide in section 2 as follows:

"The right to assign or transfer the common stock of the company shall be subject to the company's option of purchase from the stockholder of record within twenty days on written notice of the desire of said stockholder to sell, assign or transfer the same.

The other pertinent provisions of the by-laws are (a) the right of the corporation to acquire its own capital stock, and (b) that only stockholders of record may vote, they being entitled to one vote for each share of stock owned.

On July 21st, 1922, the said J. Lester Eisner transferred his stock to his wife, the defendant Marguerite E. Eisner, with the consent of the corporation. She, in turn, on September 20th of that year, sold and assigned the same stock to the defendant Milton J. Goldstein for the sum of $25,000, although it was not until December, 1923, that the same was presented for transfer upon the books of the corporation, whereupon counsel was retained and this bill filed. The complainant Baumohl, as secretary of the corporation, has refused to make such transfer. The gist of the bill is, that the sale of stock by the defendant Marguerite B. Eisner to the defendant Milton J. Goldstein was in violation of the section of the by-laws just quoted, and the latter having knowledge thereof is precluded from taking any advantage thereby, and holds the same as trustee for the company, sub-

ject to its reimbursing him. The defense is, that the by-laws contravene the policy of this state against restricting the power of alienation of property, is violative of section 15 of the Uniform Stock Transfer act (*Chap. 191 P. L. 1916*), and, even if innocuous, is too indefinite to be enforced.

The bill, answer, counter-claim and affidavits are exceedingly voluminous and as venomous as it was ever my duty to read. However, the charges and counter charges of the respective parties against each other may be disregarded for the purposes of this motion, and the questions to be decided, fortunately, rest upon facts that are, to all intents and purposes, not in dispute, and which bring the issues within the narrow compass just indicated.

The by-laws of a corporation may be enforced as a contract between the corporation and the stockholders, and between the latter *inter sese.* *14 Corp. Jur. 346; Miller* v. *Hillsborough, &c., Assn., 42 N. J. Eq. 459.*

The right of a stockholder to sell his stock cannot be defeated by any provision contained in the by-laws of a corporation. *Morris* v. *Hussong Dyeing Machine Co., 81 N. J. Eq. 256.* The questioned provision in the by-laws of the complainant company, however, does not amount to a restriction on the power of sale. It is, in its very essense of purpose, the first step or agreement in such a sale. No such limitation can be imposed upon one that takes from him the right to dispose of his property, but he may divest himself of the right to do so as to all the world except one individual with whom he has made a valid and binding contract. This is the purpose of the provision in question and not to compel the individual stockholder to keep his shares forever, unless by grace of the governing body of the company. That such an agreement is enforceable as an option under some authorities, is intimated by Vice-Chancellor Emery in *Morris* v. *Hussong, &c., supra,* although he individually appears to have questioned the soundness of the rule. Vice-Chancellor Backes, in *Prindiville* v. *Johnson & Higgins, 92 N. J. Eq. 515* (at *p. 522*), says, unequivocally:

"Charter provisions of this character, obviously, are not restrictions on the transfer, but conditional contracts of sale and specifically enforceable as contracts, and were sustained in the cases upon that theory."

Then he cites a great many authorities from various jurisdictions supporting the text. It is true that he was not dealing with a covenant in restraint of trade, but rather, as he himself points out, one "limiting the quality of the shares, not their alienability." The court of errors and appeals, in affirming this decision in *93 N. J. Eq. 425*, did not pass upon the merits of the case, but contented themselves in agreeing with the vice-chancellor, that after many years of complicity the complainant in that case should not be heard to complain of the fraud in which he charged himself with having been a partner. It is true that there is no decision in this state to serve as an authority to enforce the obligation of a contract such as the one under consideration. It is also true that there is no binding authority against it, because Vice-Chancellor Emery, while he did say in *Morris* v. *Hussong, &c., supra* (at *p. 261*) :

"Some authorities are cited sustaining provisions in charters or by-laws, expressly providing for a prior offer of sale to the company, or submitting to directors the name of the transferee for approval. But the weight of authority and—in my judgment—the better rule, seems to be against the validity of such provisions, as being an unreasonable restraint of alienation."

It was entirely unnecessary, and, as he emphatically said, his mere opinion upon a question that was not before him. In this virgin field it may be of some assistance to consider the paths that have been trodden in other jurisdictions in laying down ways to be followed in seeking a similar goal. In the case of *New England Trust Co.* v. *Abbott, 162 Mass. 148,* an option on the stockholder's shares in favor of the corporation was sustained against his executor. The court says :

"It is held in this state that a corporation, unless prohibited, may purchase its own stock [*Dupee* v. *Boston Water*

*Power Co., 114 Mass. 37*], and we see nothing opposed to public policy in such an agreement as this with corporations like this. If honestly carried out by the directors it tends to secure a trustworthy body of stockholders from which those having the care and management of the affairs of the corporation naturally would be selected. It certainly cannot be contrary to public policy that the managers of this and similar institutions should be persons of skill who possess the confidence of the public. The restraint upon alienation is no greater than is often agreed to. In England it is not unusual to find in the deeds of settlement or articles of association under which corporations or joint-stock companies have been organized and which correspond to the charter and by-laws here, provisions requiring the stockholder, in case he wishes to transfer his stock, to offer it to the directors, or to submit to them the name of the transferee for approval."

It is true that in that case the decision was placed upon a written contract by the executor distinct from the provision in the by-laws; but, nevertheless, the court also says:

· "We think that the case may well stand on the ground that the defendant's testator entered into an agreement with the plaintiff to do what the plaintiff now seeks to compel his executor to do. It is manifest that a stockholder may make a contract with a corporation to do or not to do certain things in regard to his stock, or to waive certain rights, or to submit to certain restrictions respecting which the stockholders might have no power of compulsion over him."

In *Nicholson* v. *Franklin Brewing Co., 82 Ohio St. 941,* a provision of the sort under consideration was sustained. To like effect are *Farmers M. & S. Co.* v. *Laun, 146 Wis. 252; Weiland* v. *Hogan, 177 Mich. 626; Jones* v. *Brown, 171 Mass. 318; Barrett* v. *King, 181 Mass. 476.* In some of these cases it is true the issue was framed under a contract distinct from the by-laws, but the reasoning in all of them is applicable to the case at bar.

In many cases from other states, cited against the validity of such a by-law, it will be found that there are many reasons to distinguish the decision from the one that should be

reached in the instant case. For example, in *Ireland* v. *Globe Milling and Reduction Co., 19 R. I. 180,* the opinion, so far as of interest now, turns exclusively upon an absence of legislative authority to adopt such a by-law. In *Wells* v. *Black,* a California case to be found in *37 L. R. A. 619,* the provision passed upon was entirely different, being a waiver by depositors in a saving bank of all individual liability of officers or stockholders and declared to be void for repugnance to the state constitution. The only opinion I know directly to the point and declaring the rule to be opposite to the one applied herein is *Bloede Co.* v. *Bloede, 84 Md. 129,* where an option similar to the one involved in the present case is declared to be an unreasonable restraint upon alienation. Of course, as has already been said, if such a provision of a by-law does amount to an unreasonable restraint it is void; but, for the reason I have already referred to, it seems to me it does not.

As among the original incorporators there seems to be no reason in principle why they should not be permitted to retain the control of the corporation in which they have embarked their fortunes among themselves, or such of them as stand by the vessel, where no question of a *bona fide* purchaser without notice is involved. In this court, where the intent of the parties is the thing sought to be enforced, every effort should be made to hold men to agreements into which they have voluntarily entered, where the same are not obnoxious to any law or policy, and upon the strength of which others have changed their position or circumstances, or parted with a valuable consideration. It is *their* business and *their* money which is involved. It is by their efforts that success is attained, if attained at all. Surely, the public cannot be aggrieved, and individuals acting in accordance with equitable doctrines cannot be injured, because if they have no knowledge or notice of a fact they are not injured by it.

It would seem that a condition such as the one under consideration should be distinctly favored by the policy of this state. The commonwealth is benefited by the prosperity and

success of the persons domiciled within its borders, whether natural or corporate. Consequently, any effort to keep the stock, and more especially that class thereof in which the control of the destinies of the company are contained, within the hands of the active members of the corporation "is a consummation devoutly to be wished." If there is no illegality attached thereto it will result in quickening the activities of the shareholders in the success of the common venture.

The state permits a corporation to acquire its own shares of stock (*Berger* v. *U. S. Steel Co., 63 N. J. Eq. 809*), and it would seem that there is an implied power to make all reasonable, necessary and valid contracts and agreements in contemplation thereof. To sustain the by-law of the complainant company will not affect the shares of capital stock of the large corporations so widely dealt in by the general public and, in fact, it is obvious that it is not the desire of the men who govern their affairs to place any conditions upon the free circulation of their securities in the ordinary course of trade. Other aggregations similar to the complainant are not obliged to adopt any such practice if they do not care to do so.

The parties meant something when they adopted the by-law under examination, and what they meant is clearly illustrated by the practical construction they placed upon it when, in his letter of April 6th, 1922, one of them, J. Lester Eisner, expressed his desire to dispose of his stock to his wife as a gift and considered himself bound under his covenant with the company to first offer it to his corporation and associates. It is apparent that if this is a valid provision of the by-laws a breach of its condition will work a serious injury to the rights of the complainants to have first call upon any additional stock of the company that may hereafter be authorized and issued. *Wall* v. *Utah Copper Co., 70 N. J. Eq. 17.*

The defendants say, that even assuming the clause to be not obnoxious to the policy of the law, it is too incomplete for this court to decree specific performance thereof. Were this bill filed for that purpose this objection would be fatal to it (*Pom. Eq. Jur.* § *2189; McClung Drug Co.* v. *City Realty, &c., Co., 91 N. J. Eq. 216,* and cases therein cited).

But the purpose and form of the bill is to construe the transaction between the defendants so as to impress a trust upon the stock involved. The defendant Goldstein was at that time, and had been from the creation of the company, an officer and director. Therefore he stood in a position of trust and confidence. *Pom. Eq. Jur.,* §§ *1089 et seq; Perry Trusts,* § *207; Stewart* v. *Lehigh Valley R. R. Co., 38 N. J. Law 505; Gardner* v. *Buller, 30 N. J. Eq. 702; Keely* v. *Black, 90 N. J. Eq. 439; Busch* v. *Mary A. Riddle Co., 92 N. J. Eq. 265.*

Nothing can be clearer than that a fiduciary will not be permitted to purchase the trust property over the objection of the beneficiary. When Mrs. Eisner offered her stock to Goldstein it immediately became the latter's duty to have communicated that fact to the company, in relation to which he stood as a *quasi trustee.* Upon failing to do so, and appropriating to himself property which he knew should, if it so desired, become that of the corporation, his suppression of the information, which it was his duty to convey, immediately upon his purchase, gave rise to a constructive trust. Consequently, there is no question of price or value, and, under the familiar practice, he is entitled to be reimbursed by the beneficiary for the amount he has advanced for its benefit, upon turning over to it the stock that is subject of this suit.

Section 15 of the act entitled "An act to make uniform the law of transfer of shares of stock in corporations," approved March 18th, 1916, provides that there shall be no lien in favor of the corporation upon shares of its stock, and no restriction upon the transfer thereof, by virtue of any such by-law as is now being discussed, unless notice of such lien is stated upon the certificate representing the share or shares of stock. This act, of course, was designed for the protection of innocent purchasers of stock, in the open market or otherwise, and not at all as a shield by one with knowledge of a condition to unconscionably protect himself from the consequences thereof. As I have said, the defendant Goldstein was one of the incorporators of the company and has

been an officer and director thereof from the time of the incorporation down to the present. He cannot plead innocence of the company's by-laws, whatever they may be worth, and does not undertake to do so. As has been said so often, laws are passed for the protection of rights and not for the purpose of aiding in the perpetration of fraud.

It will be recalled that on July 21st, 1922, J. Lester Eisner, one of the original stockholders, transferred his stock to his wife, one of the defendants. The bill alleges that he gave as the reason for desiring to make this transfer that it was "for tax purposes only, and that he would continue to be the beneficial owner of such stock." The defendants now say that the maxim of clean hands should be applied to this transaction, with the result that the complainants are besmirched with the conspiracy they charge against Eisner, to violate the revenue laws of the national government. I am unable to follow this reasoning. The laws of the United States said to have been broken are exceedingly complex, so that the interpretation of them has become a specialty in the practices of law and accountancy. If there is any explanation consistent with any reasonable theory in connection with the language of the bill I am bound to accept it. It might very well be that because of their respective bank accounts at that time it was advantageous to the family partnership that Mrs. Eisner temporarily assume the burden of the tax upon this and other property of her husband, and immediately afterwards convey it back to him. Besides which consideration, there is a further fact that in his affidavit, read on the return of the order to show cause, he denies that there was any corrupt or unlawful purpose in the assignment to his wife, and says that it was done out of "natural love and affection."

The twentieth section of our Corporation act contains the following language:

"* * * and whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer."

Arguing from this, the defendants say that the complainants Baumohl and Danser, in violation of this act, made the transfer absolutely upon the books of the company, whereas it should have been made "for tax purposes only." It is sufficient to point out in this connection that the transfer from Eisner to Mrs. Eisner was not "made for collateral security," but, on the other hand, was made "absolutely," even though it was to be a temporary arrangement such as the one I have indicated, although Eisner himself says, as I have pointed out, that it was an outright, irrevocable gift in consideration of love and affection.

Since the argument on the return of the order to show cause, I have been informed of the death of the defendant Mrs. Eisner, and as the proofs show that there is a considerable proportion of the purchase price due her still unpaid by Goldstein, some provision will have to be made to protect the interests of her legatees or next of kin.

For the reasons I have referred to, it is proper that, at least until the final hearing, the defendant Goldstein should be enjoined from voting stock which this time appears to be, in equity, the property of the corporation which is empowered by the statute to acquire it, because otherwise the annual election will be affected by his voting of the stock in question, to the irreparable injury of the complainants should they eventually sustain their bill, as it now appears they will. The facts necessary for a determination of this motion are sufficiently established, and while there has been no adjudication in this state settling the questions involved, the principles of law on which they depend are so well settled as to bring the matter within the opinion of Chancellor Zabriskie in *Black* v. *Delaware and Raritan Canal Co., 22 N. J. Eq. 130.*

Of counsel are unable to agree upon the terms of the order, notice shall be given.