## No. 15,142.

JEWELL COLLIERIES CORPORATION ET AL. *v.* KENDA ET AL.

(134 P. [2d] 206)

Decided September 14, 1942.   Original opinion adhered to February 23, 1943.

Messrs. HAWKINS & HAWKINS, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. J. RAMSAY HARRIS, Assistant, for defendant in error Industrial Commission.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

MATT KENDA, one of defendants in error, aged sixty-two years, to whom we hereinafter refer as claimant, was employed as a coal miner for approximately fourteen years by the Jewell Collieries Corporation, one of plaintiffs in error, hereinafter designated as employer. October 24, 1940, claimant, while digging coal in a mine of his employer, accidently injured his right eye, resulting in its enucleation. Claimant maintained that prior to this injury he had lost the vision of his left eye, and hence was entitled to the compensation provided for under section 355, chapter 97, '35 C.S.A., the pertinent portion of which reads as follows: "If the employee has previously lost vision of one eye and loses the vision of the remaining eye, he shall receive compensation for 312 weeks." December 30, 1941, the Industrial Commission, after various proceedings and orders, entered a supplemental award, the portions thereof which are pertinent here reading as follows:

"That for many years prior to claimant's injury of October 24, 1940, he had suffered from a congenital anomaly of the left or uninjured eye which caused that eye to be industrially blind. The Commission further finds from the evidence that both before and since the claimant's injury his left eye could be restored to useful industrial vision with the aid of a corrective lens.

"The Commission here points out that it has been its practice to award compensation on the basis of uncorrected vision. Many eye injuries which reduce uncorrected vision substantially can be corrected. However, to do so requires the wearing of a lens and many employments are not open to those who are forced to wear glasses. Therefore, to compensate for the handicap the injured is compensated on a basis of uncorrected vision.

"The Commission is, therefore, of the opinion and so finds that its award of April 30, 1941 is correct and is hereby approved as the final award of the Commission herein."

The award of April 30, 1941, allowed compensation

for the loss of vision of both eyes, as provided by section 355, supra, less a penalty of fifty per cent for failure of claimant to obey a safety rule. This award was affirmed by the trial court.

Several contentions are urged by counsel for the employer against this award, one being that, assuming claimant does not have vision in his left eye, the congenital loss thereof existing at birth does not come within the meaning of "lost vision" under section 355—that claimant never had vision in the left eye, and therefore could not lose that which he never had. That, in our opinion, is a narrow construction, which, having in mind the historical purpose of the Workmen's Compensation Act, prohibits its adoption.

■ ■ Another contention—perhaps the major one— is that both prior and subsequent to the accident claimant had and now has and enjoys the vision of his left eye. The commission found, on competent testimony, "that eye to be industrially blind." According to the testimony of the employer's medical expert, the vision of the left eye uncorrected "would be lower than the minimum vision, which is regarded as depriving the individual entirely of industrial vision in that eye." It is urged that in the determination of the vision of the left eye, its correction by lenses must be considered. The commission found "that both before and since the claimant's injury his left eye could be restored to useful industrial vision with the aid of a corrective lens." Whether correction of the eye in the determination of loss of vision was a necessary consideration, was a problem which we had before us in the case of *Platt-Rogers v. Industrial Commission,* 101 Colo. 458, 74 P. (2d) 673, in which, under the circumstances, we at least impliedly favored the practice of the commission in compensating on the basis of uncorrected vision. The rationale for this practice is stated in the supplemental award quoted above. That the commission for some time has followed such a practice is a factor to be considered in construing

the pertinent portion of section 355, supra, when the law thereon is silent. According to the statement of the commission, many employments are not open to those who are forced to wear lenses. When personalized to the facts before us, we have a miner sixty-two years of age, with an enucleated right eye and a left eye which, without correction, has a complete loss of industrial vision. In view of the award of the commission, we must presume that under such circumstances the job of mining, or similar industrial activity, would not be open to claimant even if he wore a lens for his left eye. In an approach to such a problem the commission undoubtedly has in mind the social objective of the Workmen's Compensation Act and the effect of the particular industrial casualty upon claimant's future usefulness in industry. We are intrigued by the plausible argument of counsel for the employer to the contrary, and there always is the temptation to translate temporary facts into legal postulates. We are, however, unable to say, from the record, that the commission was not warranted in relying upon the uncorrected vision in the determination of the loss of vision of the left eye. As indicated in *Platt-Rogers v. Industrial Commission, supra,* there may exist a state of facts which would make correction of vision an important factor, but the record does not permit us to say that this is such a case. There being, in the award before us, no question of permanent partial disability, the case of *Colorado Fuel & Iron Co. v. Industrial Commission,* 88 Colo. 573, 298 Pac. 955, cited by counsel for the employer, is not in point. Here we are concerned solely with compensation under section 355, supra. *Platt-Rogers v. Industrial Commission, supra.* Only when permanent partial disability is awarded are we concerned with section 352, chapter 97, '35 C.S.A.; and only if there is no loss of vision of the remaining eye does this section become applicable when compensation for an enucleated eye is sought. In the case of *Downs v. Industrial Commission,* 109 Colo. 12, 121 P. (2d) 489,

relied upon by counsel for the employer, we were concerned only with the phrase "total blindness," under section 352, supra, as applied to the denial of compensation thereunder.

The judgment is affirmed.

MR. JUSTICE GOUDY not participating.