HAROLD C. COSTELLO v. ESTHER J. FARRELL.
PEPSI COLA BOTTLING COMPANY OF MINNEAPOLIS AND ST. PAUL AND OTHERS, DEFENDANTS.[1]

June 29, 1951.

No. 35,511.

454

*Morgan, Headley, Raudenbush & Morgan* and *Snyder, Clarke & Dalziel,* for appellant.

*O'Brien, Horn, Seymour & O'Connor,* for respondent Harold C. Costello.

*Briggs, Gilbert, Morton, Kyle & Macartney,* for respondents Pepsi Cola Bottling Company of Minneapolis and St. Paul, Milford H. Olds, individually and as trustee, and Hope Olson.

MAGNEY, JUSTICE.

By-law 36, one of the original by-laws of defendant Pepsi Cola Bottling Company of Minneapolis and St. Paul, a Minnesota corporation, was adopted by the stockholders at their first meeting on June 30, 1937. It reads as follows:

"36. The corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof and accordingly shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person whether or not it shall have express or other notice thereof, save as expressly provided by the laws of Minnesota. PROVIDED, however, that the owner of any share or shares of stock desiring to sell the same, shall first extend the privilege to purchase the same to the remaining stockholders by notifying the Secretary, in writing, of his desire so to sell, together with the number of shares and the price of such proposed sale, and the remaining stockholders shall have ten (10) days from the date of such notice to purchase said stock on the terms stated. PROVIDED FURTHER, that no such sale or transfer shall be made for a price less than as so designated, as aforesaid, unless the said lesser price shall first have also been likewise so submitted, and no transfer of any such stock shall be made on the books of the corporation unless the foregoing provisions have been

complied with, or unless the remaining stockholders shall have waived the privilege herein provided."

On August 22, 1944, 90,000 shares, which were all of the authorized and outstanding shares of the bottling company, were held by F. S. Yantis & Company. On that date, all the 90,000 shares were sold and transferred by the Yantis company in blocks of 22,500 shares each. The following persons were the purchasers: Robert O. Farrell, Esther J. Farrell, his wife, both of Highland Park, Illinois, and Harold C. Costello and Guinevere C. Costello, his wife, both of Kenilworth, Illinois. The purchases by the two wives, for $75,000 each, were financed through the Jefferson Trust and Savings Bank of Peoria, Illinois. The respective husbands guaranteed the purchase money notes, for which the wives' stock was pledged, and also hypothecated their own shares as additional security. On September 1, 1945, the purchase money notes were renewed for an additional period of one year. At maturity, default occurred on each note. Farrell and Costello were called upon for payment under their guarantees and took up the notes and collateral on or about September 4, 1946. On January 30, 1947, Robert O. Farrell created a living trust, with Milford H. Olds as trustee, the corpus of the trust being the 22,500 shares of stock formerly owned by Mrs. Farrell. These shares of stock were then transferred on the books of the corporation. The block of shares issued to Mrs. Costello was retained by Costello after he redeemed them from the Jefferson bank, pursuant to a property settlement agreement made by the parties and confirmed by a decree of divorce entered August 23, 1946. The shares were accordingly transferred on the books of the company and placed in the name of Costello on the following day. Costello thus became the holder of record of 45,000 shares.

Robert O. Farrell died on April 26, 1947. The Harris Trust and Savings Bank of Chicago, Illinois, became the executor of his will. On August 2, 1947, stock certificate No. 87 for 22,500 shares of the bottling company stock was issued to the Harris bank as executor, over the signatures of H. C. Costello as president and Milford H.

Olds as secretary. This certificate, like all the others received in evidence, contains no statement of, or reference to, the restriction found in By-law 36. When the two Costellos and the two Farrells purchased all the outstanding stock of the corporation in 1944, the stock certificates issued to them contained no statement calling attention to By-law 36.

Charles J. Roubik, a vice president of the Harris bank and connected with its trust department, had charge of the Farrell estate. In October 1947 he met Costello in St. Paul. The question was raised as to the executor's intention with respect to the 22,500 shares of stock in the company held by the estate. Costello called Roubik's attention to By-law 36 and its restrictive provision. Roubik made a memorandum as to the restriction and placed it in the estate file.

From August 22, 1944, Farrell was president of the Pepsi Cola corporation, Costello, vice president, Mrs. Farrell, secretary, and Mrs. Costello, treasurer. Costello became president in May 1947. At a special meeting of the board of directors held January 21, 1947, Mrs. Farrell, who had ceased to be a stockholder, was succeeded as secretary by Milford H. Olds, trustee. As secretary of the company, Mrs. Farrell performed no duties except to sign such formal documents as her husband brought home for her to sign. She wrote or signed no minutes of any meeting and at no time had the custody of the minute book.

On March 17, 1949, Lewis D. Clarke of Waukegan, Illinois, as attorney for Mrs. Farrell, wrote Roubik, who had charge of the Farrell estate, making an offer on behalf of Mrs. Farrell to purchase from the Farrell estate the 22,500 shares "for a price of $11,250 cash." On March 24, 1949, Roubik wrote Clarke:

"* * * Her offer is made at the price at which we included the stock in the federal estate tax return and which, in our judgment, was its value as of April 26, 1947. In view of the company's earnings and improved condition since then, we believe that the estate would be warranted in selling the stock to Mrs. Farrell at 65¢ per

share, and if that price is agreeable to her we will be glad to make delivery of the stock to her as soon as she is ready to pay for it."

On March 26, 1949, Clarke replied to Roubik as follows:

"In regard to your letter of March 24, this is to advise you that Mrs. Farrell will accept the offer to purchase the 22,500 shares of Pepsi-Cola Bottling Company of Minneapolis and St. Paul common stock at the price of 65¢ per share.

"Mrs. Farrell will contact you within the next week or ten days to consummate this deal."

An undated letter in Mrs. Farrell's handwriting, received by Roubik on March 31, reads:

"There are enclosed two checks aggregating $14,625.00 in payment for 22,500 shares of Pepsi Cola Bottling Company of Minneapolis and St. Paul held in Robert O. Farrell estate."

One of these checks was for $10,625, signed by Esther J. Farrell, dated March 30, 1949, payable to the Harris Trust and Savings Bank, drawn on the Harris Trust and Savings Bank, perforated 4/6/49, and bearing the Chicago Clearing House stamp with date of April 7, 1949. The other check was for $4,000, signed by Esther J. Farrell, dated March 30, 1949, payable to the Harris Trust and Savings Bank, drawn on the First National Bank of Highland Park, Illinois, perforated 4/8/49, and bearing on reverse side the Chicago Clearing House stamp and the Federal Reserve Bank stamp, each with date of April 7, 1949.

On the same day that Roubik received Mrs. Farrell's letter with the enclosed checks, and probably in the same mail, Roubik received a letter from Costello enclosing a copy of By-law 36. On the basis of the letter from Mrs. Farrell enclosing the checks and the letter from Costello enclosing a copy of By-law 36, Roubik had the checks held up until further order. In his mind there was some uncertainty as to whether Mrs. Farrell would accept delivery of the stock in view of the provisions of the by-law. He telephoned Clarke concerning By-law 36 and later that day sent him two copies

of it. After his conversation with Roubik, Clarke telephoned Mrs. Farrell and told her about the restriction in By-law 36. Mrs. Farrell had no personal knowledge of the by-law or of any restriction upon the transfer of the stock of the bottling company until informed of it by Clarke in the manner above stated.

On April 6, 1949, Mrs. Farrell and Clarke called personally upon Roubik and a Mr. Jess Halsted, attorney for the Harris bank. Roubik told Mrs. Farrell that she would be taking the stock at her own risk, in view of Costello's objections to its sale based on By-law 36. Mrs. Farrell replied that "Mr. Devitt [James L. Devitt of Oskaloosa, Iowa] had called Mr. Costello and it was all right." At the time Roubik handed Mrs. Farrell the certificate of stock, she received also a copy of a directors' resolution authorizing the transfer of registered securities. The stock certificate, duly endorsed for transfer, was then delivered to Mrs. Farrell. Apparently on the same day, Mrs. Farrell's two checks were processed by the Harris bank and were paid in due course.

The certificate and resolution of the board of directors of the bank were presented by the First National Bank to the bottling company for transfer on its books, and by resolution of August 9, 1949, at a special meeting of the board of directors, the requested transfer was refused by reason only of the dispute which is the subject of this action. The restriction embodied in By-law 36 was not printed or stamped on certificate No. 87. Defendant Olds, the trustee of the living trust created by Robert O. Farrell, testified that as trustee he was not in position to avail himself of the opportunity under By-law 36 to purchase any of the shares bought by Mrs. Farrell from the Harris bank.

In view of the grounds upon which this decision is based, it would not be necessary to detail many of the facts set out above, but a recital gives a full picture of the whole transaction.

Harold C. Costello demanded judgment that the purported sale by the executor of the estate of Robert O. Farrell to Mrs. Farrell of 22,500 shares of the bottling company stock, evidenced by certificate No. 87, be declared null and void, and that the bottling company

be permanently enjoined and restrained from making said transfer on its books or issuing in the name of Mrs. Farrell a certificate for the shares evidenced by certificate No. 87. He further demanded judgment that he be entitled to purchase such shares in the event that within 90 days after the entry of judgment herein the amount she paid to said executor for said shares be by him paid to or deposited by him with the clerk of court for payment to Mrs. Farrell. He demanded judgment that Mrs. Farrell be required, upon payment to her or delivery to the clerk of the district court for her account of that amount, to deliver to plaintiff certificate No. 87, together with the purported assignment or assignments thereof to enable the bottling company to cancel certificate No. 87 and issue a new certificate for said 22,500 shares in the name of plaintiff. He asked that defendant executor be required to execute and deliver such assignments, if any, or other instruments as the court should determine were necessary to transfer to plaintiff good title to the shares, and otherwise to do equity as between the various parties.

Mrs. Farrell's claim is that, since she knew nothing about the restriction found in By-law 36, and that, since there was no notation on the certificate itself calling attention to the restriction, the purported by-law is null and void as to this transaction in view of M. S. A. 302.16. The court made findings in favor of plaintiff substantially as prayed for by plaintiff, and Mrs. Farrell appeals from the judgment entered pursuant to such findings.

Section 302.16, the statute around which this controversy centers, reads as follows:

"There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

The above is § 15 of the uniform stock transfer act, 58 Stat. 927, 930 (6 Uniform Laws, Annotated, § 15). There is no restriction stated

on stock certificate No. 87 of the bottling company, the transfer of which is here being litigated. The question presented to us is whether By-law 36 is binding upon Mrs. Farrell notwithstanding the wording of § 302.16.

The language of the statute is plain. There is no ambiguity. As applied to the facts of the instant case, it states in effect that there shall be no restriction upon the transfer of the shares represented by certificate No. 87 of the bottling company by virtue of By-law 36 unless the restriction is stated upon the certificate. It would therefore naturally follow, it would seem, that By-law 36 is not binding upon Mrs. Farrell, since there is nothing on the certificate to call attention to the restriction. Plaintiff's contention, however, is that Mrs. Farrell had knowledge of the restriction embodied in By-law 36 at the time she received the certificate from the bank; therefore, that she is bound thereby.

In order to sustain plaintiff's contention, this court, in effect, would be obliged to interpret § 302.16 as if it read as follows:

"* * * there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless * * * the restriction is stated upon the certificate or unless the certificate has been sold to a purchaser who is not a purchaser for value in good faith without notice of any such restrictive by-law."

The question presented to us is whether the element of *bona fides* is inherent in the statute. When the legislature adopted § 302.16, did it intend that the statute should be interpreted to mean what its clear unambiguous language imports, or did it intend that the courts should by interpretation incorporate a feature such as above indicated? That the legislature in at least three instances in c. 302 had in mind purchasers for value in good faith without notice is evident from the language used in certain sections. Section 302.05 provides:

"The title of a transferee of a certificate under a power of attorney or assignment not written upon the certificate, * * * shall

cease and determine if, at any time prior to the surrender of the certificate to the corporation issuing it, another person, *for value in good faith, and without notice* of the prior transfer, shall purchase and obtain delivery of such certificate with the endorsement of the person appearing by the certificate to be the owner thereof, * * *." (Italics supplied.)

Section 302.08 provides:

"If the endorsement or delivery of a certificate was procured by fraud or duress; or was made under such mistake as to make the endorsement or delivery inequitable; or if the delivery of a certificate was made without authority from the owner, or after the owner's death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless the certificate has been transferred to a *purchaser for value in good faith without notice* of any facts making the transfer wrongful, * * *." (Italics supplied.)

Section 302.09 provides:

"Although the transfer of a certificate or of shares represented thereby has been rescinded or set aside, nevertheless, if the transferee has possession of the certificate * * * a subsequent transfer of such certificate by the transferee, * * * to a *purchaser for value in good faith, without notice* of any facts making the transfer wrongful, shall give such purchaser an indefeasible right to the certificate and the shares represented thereby." (Italics supplied.)

In the three sections of the uniform stock transfer act quoted above, purchasers for value in good faith without notice of infirmities in certificates of stock are protected. If the authors of the uniform act and the legislature had intended that the benefit of the provision that there should be no restriction upon the transfer of shares represented by a stock certificate by virtue of any by-laws of the corporation, unless the restriction were stated upon the certificate, should be limited to a purchaser for value in good faith without notice of the restrictive by-law, they undoubtedly

would have said so. They simply said that there should be no restriction unless the restriction was stated upon the certificate. The commissioners' note appended to § 15 (M. S. A. 302.16) of the uniform stock transfer act (6 Uniform Laws, Annotated, § 15) declared their purpose to be "to make certificates of stock so far as possible the sole representatives of the shares which they represent." When they provided that there should be no restriction upon the transfer of shares represented by a certificate by virtue of any by-laws of such corporation unless the restriction be stated upon the certificate, they furthered their expressed purpose.

Few cases have had under consideration the question raised in this appeal. In Age Publishing Co. v. Becker, 110 Colo. 319, 321, 134 P. (2d) 205, a mandamus action, where the facts are similar to the instant case, the return and answer of the defendant corporation set up that the relator had "full personal knowledge of the restriction" at the time he bought the stock in question. The restriction was not stated upon the certificate as required by the Colorado statute, similar to that of Minnesota. The court affirmed an order sustaining relator's demurrer to the answer. In doing so it said (110 Colo. 322, 134 P. [2d] 206):

"We do not pass upon the question of the reasonableness of the regulation or restriction. The trial court was fully justified in sustaining the demurrer to the amended answer on the ground that the corporation had failed to comply with the statute. We deem it unnecessary to discuss other assigned errors."

In Hoosier Chemical Works, Inc. v. Brown, 200 Ind. 535, 165 N. E. 323, the lien provision of § 15 was involved. It was an action in mandamus to compel the transfer of shares to a purchaser. Defendant claimed that the shares had not been fully paid for upon the original issuance, to the knowledge of both seller and buyer, and that the corporation had a lien for the balance of the subscription. The lien was not stated on the certificate. The court affirmed the judgment for plaintiff upon two grounds: First, that it could not disturb the finding that the stock had been paid in full; and, second,

that the lien provision was not printed on the certificate as the statute required.

In Magnetic Mfg. Co. v. Manegold, 201 Wis. 154, 229 N. W. 544, the facts are quite different from those of the instant case. The restriction was not printed on the certificate, but the owner of the certificate complied with the by-law. The corporation elected not to exercise its option. The owner then sold the stock to a business rival, and the corporation refused to transfer it to the name of the purchaser. The court ordered the corporation to make the transfer. It did not state whether the purchaser of the stock had knowledge of the restriction prior to his purchase, but it stated (201 Wis. 157, 229 N. W. 545):

"If the restriction did apply to transfers other than on sale it could not operate here because the statute, sec. 183.14, provides that there shall be no restrictions on transfer of stock by any by-law unless the right of the corporation to the restriction shall be printed upon the certificate. The restriction here involved was not so printed. The restriction would not have bound Manegold [the purchaser] had Kubitz [the seller] not complied with the by-law. With greater reason it does not apply when he did comply with it."

See, also, Peets v. Manhasset Civil Engineers, Inc. 68 N. Y. S. (2d) 338.

No Minnesota case has considered the legal question here involved. In Model Clothing House v. Dickinson, 146 Minn. 367, 178 N. W. 957, an action to annul a sale and transfer of stock, the restriction upon transfer created by a by-law was printed on the certificate. Furthermore, the case was decided prior to the enactment by the Minnesota legislature of the uniform stock transfer act. Also, the sellers of the stock were two of the five incorporators of the corporation, who had entered into a restrictive agreement, which, for the purpose of giving effect to the agreement, was incorporated into the by-laws. The court cancelled the sale and held that the evidence justified the finding that *the sale* in controversy *was made in violation of such a contract* to a business rival having

notice of it. It is apparent, therefore, that the Model Clothing House case can have no controlling application here.

Plaintiff cites several decisions in support of his position. Among them are Baumohl v. Goldstein, 95 N. J. Eq. 597, 124 A. 118; Doss v. Yingling, 95 Ind. App. 494, 172 N. E. 801; and Buckner v. Morris Bros. Shoe Co. 288 Ill. App. 632, 7 N. E. (2d) 393. In the Baumohl case, two of the plaintiffs and one of the defendants were three of the five incorporators and original stockholders. The restrictive by-law was adopted at the time of incorporation. Probably in view of these facts, the court referred to the restriction as (95 N. J. Eq. 600, 124 A. 120) "the obligation of a contract," importing a privity between these parties. No such relationship exists between Mrs. Farrell and plaintiff. In the Doss case, Yingling, president of the corporation, had entered into a written restrictive agreement with the other stockholders. In the Age Publishing Co. case, the court commented on the Doss case as follows (110 Colo. 321, 134 P. [2d] 206):

"* * * The Indiana case, Doss v. Yingling, 95 Ind. App. 494, 172 N. E. 801, presents the issue on an identical statutory provision, i. e., section 100, supra, and while the decision, which upholds the transfer of a stock certificate which did not contain a restriction in printing thereon in conformity with the statute, is persuasive, it is based concededly upon a different state of facts than those before us. Yingling was president of the corporation and had entered into a written agreement with the other stockholders, which agreement was a part of the consideration for the purchase of stock and provided that none of them would transfer any stock without giving the others a ten day option to purchase. The court refused to permit him to invoke the statute as an excuse for violating his agreement. Of the 500 shares of stock in the corporation, Yingling held 290."

The case of Buckner v. Morris Bros. Shoe Co. 288 Ill. App. 632, 7 N. E. (2d) 393, cited by plaintiff as an authority sustaining his position, is a decision without an opinion. It is of no assistance.

The only decision cited by plaintiff which sustains his position is United States Gypsum Co. v. Houston, 239 Mich. 249, 252, 214 N. W. 197, 199. It involved a lien.

The court gave no reason for so holding, but stated categorically that—

"if the corporation issues a certificate without stating thereon, in appropriate language, its right of lien, it may not assert its lien against one who holds in due course, or in good faith, for value and without notice."

Plaintiff also cites the recent case of Henry Simons Lbr. Co. v. Simons, 232 Minn. 187, 44 N. W. (2d) 726. That case *involved an agreement* entered into by a corporation with its shareholders, defendant being one of them, requiring the individual shareholders to offer their shares to the corporation and to other shareholders on specified terms before selling to an outsider. That brief statement of the Simons case is sufficient to indicate that the question involved in that case is not the same or similar to the one involved here. There was no contract between Mrs. Farrell and the corporation or Costello agreeing to a restriction on the sale of stock of the corporation. In our opinion, the restrictive by-law, which was not stated on certificate No. 87, the certificate which Mrs. Farrell purchased, is no restriction upon the transfer of the shares represented by the certificate. The statute was not complied with. If Costello or the officers of the corporation had attached such importance to the restrictive by-law at the time the shares were purchased from the Yantis company in 1944 and since that time, and which they attach to it now, after Mrs. Farrell has purchased or agreed to purchase these shares, it would seem that they could readily have made effective their concern by having the restriction stated on the certificates.

One of the purposes of the statute (§ 302.16) must have been to avoid such litigation as we have here. This is not a case where there has been an agreement for a restriction between the selling stockholder and the other stockholders.

Whether or not Mrs. Farrell was a purchaser for value in good faith, without notice of the restriction, is, in our opinion, not material. It is evident that she was not aware of the restriction at the time the agreement to purchase the stock was made and at the time her checks in payment were received by the bank. She did know about it at the time the certificate was delivered to her. We have detailed the facts in connection with the purchase. It is not necessary to consider the application of the "unclean hands" doctrine as it might apply to Costello as president of the company and in connection with his activities, nor the question of the undesirability of Mrs. Farrell as a stockholder.

It is our opinion that the court erred in holding that By-law 36 was binding on Mrs. Farrell.

Judgment reversed with directions to enter judgment in favor of defendant Esther J. Farrell.

[1]Reported in 48 N. W. (2d) 564.