**B & H WAREHOUSE, INC., Plaintiff,**

v.

**ATLAS VAN LINES, INC., Defendant.**

**Civ. A. No. 5–924.**

United States District Court,
N. D. Texas,
Lubbock Division.

Sept. 28, 1972.

W. D. Benson, Kingsland, Tex., D. H. Benson, Griffith, Brister & Benson, Lubbock, Tex., for plaintiff.

James K. Presnal, Austin, Tex., Herbert Burstein, Zelby & Burstein, New York, N. Y., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case came on for trial in Lubbock, Texas, on the 24th day of August, 1972, and there appeared in open court the plaintiff by its representative and its attorneys and the defendant by its representative and its attorneys. The Court heard the case without a jury. After the introduction of all evidence, after hearing the argument of counsel, and after both sides had rested the presentation of their case, the Court has again considered all of the pleadings herein, the briefs of the parties, and the submissions made by the parties after the close of the trial and files herewith its findings of fact and conclusions of law.

## FINDINGS OF FACT

The defendant, Atlas Van Lines, Inc. (Atlas), is a Delaware corporation which was incorporated May 19, 1948, in the State of Delaware. Among other things this charter provides as follows:

FOURTEENTH. The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

Plaintiff B & H Warehouse, Inc. (B & H), a Texas corporation, was issued 30 shares of Class A common stock. Subsequently a voting trust certificate was issued to the plaintiff on August 1, 1950, in exchange for these 30 shares of Common Capital Stock (Certificate No. 21, Pl.Ex. 3). The trust agreement (Def. Ex. 2) was dated November 30, 1949, and had been executed on behalf of the plaintiff corporation in this suit. Accordingly, the corporation was bound thereby. By paragraph 9 of Defendant's Exhibit 2 a restriction was placed on the right of an owner of such voting trust certificate to alienate such shares of stock without giving the option first to the defendant corporation to buy the stock at book value. However, this agreement expired on November 30, 1961, and has not been renewed.

The plaintiff continued to be the owner of its shares of stock and had surrendered its original unrestricted shares (Def.Ex. 3) to the issuing corporation. This particular certificate has never been changed or altered but has remained in the possession of the defendant corporation.

In 1966 an amendment to the corporate charter of Atlas was filed with the Secretary of State of the State of Dela-

ware (Pl.Ex. 5) providing that the Class A shares could not be sold until such share or shares had been first offered in writing to the corporation for purchase at a price equal to the book value of said shares of stock (plus $100 per share as full allowance for good will). It is the contention of the defendant that this charter amendment was made pursuant to the reservation in paragraph Fourteenth above quoted. There is no evidence in the record that the plaintiff in this case, or any of its officers, agents, or employees, in any way protested or voted against such charter amendment. From the record before this Court it is apparent that this amendment was made effective by action of the board of directors of Atlas, and since plaintiff has not placed into issue the legality of this amendment the Court assumes and accepts its validity.

In 1970, following a 1967 revision of the Delaware Corporation Act, Atlas filed another amendment to its corporate charter (pursuant to action of its board of directors and stockholders) providing that before selling shares of Class A stock, a stockholder must offer such shares to the corporation for $333.330 per share, or approximately $10,000 for 30 shares of Class A stock (see pp. 5–6 of the 1970 amendment, Pl.Ex. 5). (As a matter of reference, both of the charter amendments as above set forth are attached to and were introduced by the plaintiff in this case as part of Plaintiff's Exhibit 5. All of said exhibits including the letter and attachment thereto referred to as Plaintiff's Exhibit 5 were originally attached to the deposition of Mr. J. C. Hilton, which deposition was not introduced into evidence.)

The plaintiff has filed this suit alleging that by the above charter amendments and by the option to purchase its stock at a specified price, a conversion of plaintiff's stock has been effected by the defendant and that the present value of the stock is $60,000. The plaintiff prays for damages in accordance with such alleged conversion. In the alternative the plaintiff has prayed for declaratory judgment removing the restriction against plaintiff's shares of stock.

The record in this case does not reveal any evidence that the defendant corporation was ever asked to exercise its option on these shares of stock by the plaintiff or by any other person, or that the defendant corporation ever refused or failed upon request to transfer the ownership of such shares of stock on its corporate records, or that anyone has ever requested of the defendant corporation that it make such a transfer of the ownership of such stock on its corporate records. Although the original certificate for this 30 shares of Class A common stock (Certif. No. C–43, Def.Ex. 3) has remained in the possession of Atlas since it was surrendered in exchange for the voting trust certificate, there has not been any alteration or change on its face in any manner. No notation or other notice of the option of the corporation to buy appears on the face of this stock certificate.

## CONCLUSIONS OF LAW

The Court has jurisdiction in the present case since plaintiff, a Texas corporation, and defendant, a Delaware corporation, are citizens of different states and the amount in controversy exceeds $10,000 exclusive of interest and costs. 28 U.S.C. § 1332(a).

Plaintiff in its amended complaint prays for judgment against defendant in the amount of $60,000 for damages resulting from defendant's alleged imposition of illegal restrictions on plaintiff's Class A common stock in defendant corporation, which damages are allegedly caused by plaintiff's inability to sell said stock for the price it would bring were such restrictions not imposed by defendant. In the alternative, plaintiff prays for declaratory relief to the effect that said restrictions be declared invalid and of no present or future force and effect on plaintiff and that the stock in question may be sold free and clear of these restrictions.

There are at least three possible sources of restrictions on plaintiff's

stock. In order for plaintiff to be entitled to equitable or monetary relief, the Court must find that restrictions from all three of these sources are invalid and contrary to law.

■ First of all, plaintiff claims that the restriction imposed on its thirty shares of Class A stock by the voting trust agreement dated November 30, 1949, is no longer effective. This agreement (Defendant's Ex. 2) provided in paragraph 9 that

> In the event that the holder of any trust certificate shall desire to sell or pledge his beneficial interest in the shares of stock represented thereby, he shall first give to the trustees notice in writing . . . , and the trustees shall have the right at their option at anytime within thirty (30) days after the receipt of such notice to purchase the same at the book value of the stock represented by such trust certificate at the time of such purchase . . . .

Defendant claims that this restriction imposed by the voting trust agreement is in effect and binds plaintiff at the present time. This Court holds to the contrary. Paragraph 11 of the voting trust agreement provides that "The trust hereby created shall continue ten (10) years from the date hereof, and shall then terminate . . . ." Ten years from the date of the agreement having long since elapsed, the Court holds that the restrictions contained in the agreement, as well as the trust created thereby, are invalid and of no force and effect upon plaintiff.

The evidence indicates that plaintiff has never surrendered its trust certificate to defendant. Paragraph 11 provides that "Upon the termination of the trust and [sic] trustees shall, upon the surrender of the trust certificates . . . , assign and transfer to them the . . . shares of stock thereby represented." However, automatic termination of the voting trust agreement, by the terms of the agreement, is not made contingent upon surrender of the trust certificates. Therefore the nonsurrender of said certificates does not cause the restrictions contained in the agreement to continue in effect.

■■ Second, defendant claims that plaintiff is bound by a 1970 amendment to defendant's corporate charter (Plaintiff's Ex. 5) which provides that

> no share or shares of Common Stock, . . . Class A, of this corporation shall be sold . . . by any stockholder . . . unless and until such share or shares shall have been first offered in writing to the corporation for purchase at . . . ($333.330) . . . per share . . . .

State law governs the assertion of rights by a stockholder against a Delaware corporation. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The effect of this charter amendment depends therefore upon a construction of section 202(b) of the Delaware General Corporation Law, 8 Del.C. § 202(b), which became effective in 1967, prior to the charter amendment in question. This section of the statute provides that

> A restriction on the transfer . . . of securities of a corporation may be imposed either by the certificate of incorporation or by the by-laws . . . . No restriction so imposed shall be binding with respect to securities issued prior to the adoption of the restriction unless the holders of the securities are parties to an agreement or voted in favor of the restriction.

■ It is uncontroverted that plaintiff did not vote for the restriction imposed by the 1970 charter amendment (Plaintiff's Ex. 5). Thus under the 1967 Delaware General Corporation Law, the restriction cannot be binding upon plaintiff. In addition, 8 Del.C. § 202(a) provides that "Unless noted conspicuously on the security, a restriction, even though permitted by this section, is ineffective except against a person with actual knowledge." Apparently the 1970

restriction is not affixed to the face of plaintiff's certificate. Nevertheless, plaintiff has notice of the restriction and is bound thereby.

But the question remains whether the 1967 revision of the Delaware General Corporation Law applies to stockholders owning stock in defendant corporation prior to that revision. It is uncontroverted that the law of Delaware prior to 1967 did not provide that a restriction on stock transfer was ineffective if not voted for by the complaining stockholder.

■■ It is clear that "the reserved power of the State of Delaware to amend or repeal any portion of the Delaware Corporation Law is established." Voege v. American Sumatra Tobacco Corp., 192 F.Supp. 689 (D.Del.1961). In Davis v. Louisville Gas & Electric Co., 16 Del.Ch. 157, 142 A. 654 (1928), a corporation was created in 1913. In 1927, the Delaware statute was changed to give corporations increased power to amend their governing documents. The court held that the new law was effective as to stockholders owning stock prior to the new statute, despite the contractual relationship implicit in the stockholder-corporation situation. The court held that by the terms of the certificate of incorporation, there was

> thus an agreement between the corporation and its stockholders that the power of amendment to the full extent that future legislation might authorize its exercise was reserved to the corporation. In point of power, therefore, it is as though the act of 1927 were a part of the law at the time the corporation was created, in which case there could be no debate concerning the corporation's rights.

*Id.* at 658. Paragraph Fourteenth of the original certificate of incorporation of defendant provided that

> This corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed by statute, and

all rights conferred on stockholders herein, are granted subject to this reservation.

Thus this Court holds that the 1967 revision of the Delaware law, and particularly 8 Del.C. § 202, was effective in regard to plaintiff's stock in 1970 so as to make the restrictions imposed by the 1970 charter amendment ineffective against plaintiff. See Peters v. United States Mortgage Co., 13 Del.Ch. 11, 114 A. 598, 600 (1921).

■■ Third, defendant argues that plaintiff's stock is restricted by the 1966 amendment to defendant's certificate of incorporation. This amendment provides that

> no share or shares of common stock, Class A . . . of this corporation shall be sold . . . or transferred by any stockholder . . . unless and until such share or shares shall have been first offered in writing to the corporation for purchase at a price equal to the book value of said shares of stock (plus the sum of . . . ($100.00) for each share . . . as a full allowance for good will) . . . ..

Since this amendment was passed and became effective prior to the 1967 revision of the Delaware General Corporation Law, plaintiff could have been bound by this 1966 restriction notwithstanding the fact that he did not vote for the amendment. Neither party challenges the legality of the 1966 amendment, which this Court may therefore consider as a legal and binding amendment to defendant's certificate of incorporation.

Although free alienability is an inherent attribute of corporate securities, the Delaware courts have consistently upheld the legality of restrictions such as the one imposed in 1966 by defendant corporation. In Lawson v. Household Finance Corp., 17 Del.Ch. 1, 152 A. 723 (1930), the Delaware Supreme Court upheld a restriction in a certificate of incorporation providing that the corporation should have the option of buying

shares at an appraised value, with no provision for good will. The effect of this holding was of course that the stockholder in question could be forced to sell his stock to the corporation, pursuant to the stock restriction, for a lower price than he could get on the open market.

Plaintiff contends, however, that even the 1966 amendment is governed by section 15 of the Uniform Stock Transfer Act, which at that time was codified as 8 Del.C. § 194:

> There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate.

This Act was effective in Delaware beginning in 1945, prior to plaintiff's purchase of his Class A stock in defendant corporation.

■ There is a split of authority in the various states as to whether under section 15 of the U.S.T.A. a stock restriction not printed on the stock certificate is effective against a transferee or stockholder having notice of the restriction. The preferred rule seems to be that such a transferee is bound, since the purpose of the statute is merely one of providing fair notice to a purchaser for value. Baumohl v. Goldstein, 95 N. J.Eq. 597, 124 A. 118 (1924); Tomoser v. Kamphausen, 307 N.Y. 797, 121 N.E. 2d 622 (1954). *Contra,* Costello v. Farrell, 234 Minn. 453, 48 N.W.2d 557 (1951). Section 15 of the U.S.T.A. was replaced in Delaware by the Uniform Commercial Code § 8–204, 5A Del.C. § 8–204, providing that

> Unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it.

If governed by section 8–204 of the U. C.C., therefore, the restriction in question would be effective against plaintiff and against any transferee taking from plaintiff with notice of the restriction. Since plaintiff complains that the price of its stock is being depressed on the open market because of the restriction, it may be inferred that past prospective purchasers have been aware of the restriction.

The Uniform Stock Transfer Act was specifically repealed in Delaware by the Uniform Commercial Code, effective June 30, 1967. 5A Del.C. § 10–102(1). And section 10–101 of the U.C.C., 5A Del.C. § 10–101, provides that "This title . . . applies to transactions entered into and events occurring after [June 30, 1967]." Since any transfer of plaintiff's shares, to the corporation or otherwise, would be a "transaction" entered into and occurring after the effective date of the Code, such transfer would be governed by the Code. Therefore the 1966 stock restriction would be valid and binding upon a purchaser with notice notwithstanding the absence of the restriction on the face of the stock certificate.

The Uniform Commercial Code in Delaware seems to be merely a clarification of the Uniform Stock Transfer Act which it replaces. The Comment accompanying the Code makes it clear that the Code adopts the reasoning of *Baumohl, supra,* and *Tomoser, supra,* and rejects that of *Costello, supra,* in expressing the public policy of the State of Delaware. It makes no real difference, therefore, whether the U.C.C. or the U.S.T.A. governs the 1966 stock transfer restriction. The Court holds therefore that the restrictions effected by the 1966 amendment to defendant's certificate of incorporation are effective against plaintiff and against any transferee with notice. For this reason, all relief must be denied.

■ But even if the U.S.T.A. were effective against defendant, the plaintiff would be entitled to no relief. This is

**524**

because the stock certificates representing the thirty shares of Class A stock are in the possession of defendant corporation although under the equitable ownership of plaintiff. Plaintiff has never tendered its voting trust certificate in exchange for those stock certificates. Therefore all that defendant must do under the U.S.T.A. is to affix the 1966 restriction conspicuously upon the face of the stock certificates before tendering them to plaintiff in exchange for the voting trust certificate. Under the U.S.T.A. or U.C.C., the restriction would then be clearly effective against plaintiff or against a prospective transferee of the Class A shares.

■ Plaintiff places much reliance upon Sandor Petroleum Corp. v. Williams, 321 S.W.2d 614 (Tex.Civ.App.—Eastland 1959, writ ref. n. r. e.). In the first place, this case is not expressive of the law of the State of Delaware. The *Lawson* case, *supra*, makes it clear that even those stock restrictions which force the stockholder to sell to the corporation at a price lower than market price are not disfavored in Delaware. Second, paragraph Fourteenth of defendant's original certificate of incorporation, in effect when plaintiff purchased its stock, clearly constitutes part of the contract between plaintiff and defendant and binds plaintiff to subsequent changes in the certificate of incorporation which are effected according to law. Third, the present case involves no cancellation of stock certificates, as in *Sandor*. Thus *Sandor* is of no benefit to plaintiff in the instant case.

■ Plaintiff is further barred from relief by the equitable doctrine of laches. Plaintiff has taken no action to assert his alleged rights as a stockholder despite two successive amendments to the certificate of incorporation which he alleges are violative of his rights. Plaintiff has not attempted to transfer his stock free and clear of restrictions. Plaintiff has been able to name not even one prospective purchaser who would buy his stock but for the restrictions in question. Thus even if the acts of defendant were illegal in regard to plaintiff, plaintiff must be deemed to have ratified those acts. Bay Newfoundland Co. v. Wilson & Co., 27 Del.Ch. 344, 37 A.2d 59, 64 (1944).

Judgment will be entered denying plaintiff any recovery at law or in equity and taxing costs against plaintiff.