CITY OF FAIRFIELD,
Iowa, Appellant,

v.

HARPER DRILLING COMPANY and
National Fire Insurance Company
of Hartford, Appellees.

No. 03–1067.

Supreme Court of Iowa.

Jan. 14, 2005.

Rehearing Denied Feb. 22, 2005.

Ivan T. Webber of Ahlers & Cooney, P.C., Des Moines, for appellant.

Benjamin B. Ullem and John F. Fatino of Whitfield & Eddy, P.L.C., Des Moines, and G. Steven Ruprecht of Niewald, Waldeck & Brown, Kansas City, Missouri, for appellees.

WIGGINS, Justice.

In this case, we must decide whether a city can forfeit the bidder's bond of a contractor whose bid the city accepted subject to the approval of another agency. The district court held the city could not forfeit the bidder's bond, dismissed the city's petition, and exonerated the bond. The city appealed and we transferred the case to the court of appeals, which reversed the district court. On further review, we vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts and Proceedings.

The parties agree the undisputed facts reveal the City of Fairfield requested bids for a public improvement involving the Jordan Well Project. The contract-letting documents required the successful bidder to file a bond or other surety in an amount equal to ten percent of the amount of the proposal as liquidated damages in the event the successful bidder did not enter into a contract with Fairfield within ten days after the award of the contract. This language was required to be included in the contract-letting documents by Iowa Code section 384.97(5) (2001). Additionally the contract-letting documents required:

> The successful bidder must complete the Minority, Women's, and Small Rural Area Business Enterprise Utilizations Worksheet and submit it to the loan recipient prior to contract award, with documentation demonstrating compliance with the affirmative steps for MBA/WBE/SBRA participation in order to be deemed responsible if an eight percent fair share for Minority and Women's Business Enterprises is not proposed.

The contract-letting documents also contained a notice of bid acceptance, which Fairfield was to use to notify the successful bidder its proposal was accepted by the city. The notice of bid acceptance contained language notifying the successful bidder that if the successful bidder failed to execute an agreement for the project, Fairfield would consider the failure to enter into the agreement as a forfeiture of the bidder's bond.

Harper Drilling Company (Harper) submitted a sealed bid to complete the project for $719,584. National Fire Insurance Company of Hartford (National) issued a bidder's bond for $71,958.40 on Harper's behalf, and Harper submitted the bidder's bond with its bid. Fairfield opened the bids on February 25, 2002. On March 4, the city engineer recommended Fairfield accept Harper's bid "subject to the concurrence of the Iowa Department of Natural Resources" (DNR). At the March 11 city council meeting, the council passed a resolution containing the following language, "Be it further resolved that said award of contract to Harper ... is conditionally awarded and is subject to concurrence with the award of contract by the Iowa Department of Natural Resources." Fairfield did not issue a notice of bid acceptance to Harper. Instead, the council forwarded Harper's proposal to the DNR for its concurrence.

On March 19, the DNR wrote Fairfield and informed it that Harper's proposal did not conform to the MBE/WBE requirements contained in the proposal; thus, it could not concur in the award of the contract. On March 25, the city engineer informed Harper of the DNR's position, asked Harper for additional information, and informed Harper to "respond as soon as possible as the contract cannot be awarded until [the DNR] receives this information." For reasons unknown, Harper failed to provide the MBE/WBE compliance documentation. On March 29, Harper requested its bidder's bond be returned because the contract-letting documents provided for the return of the bidder's bond if more than thirty days elapsed from the proposal, and the proposal was not accepted by Fairfield. Fairfield retained the bidder's bond, unconditionally accepted the second lowest bidder's bid, and brought an action against Harper and National. In its action against Harper and

National, Fairfield alleged Harper failed to enter into the contract after it was awarded the contract for the project; thus, Harper and its bonding company, National, owed Fairfield ten percent of Harper's proposal, $71,958.40, as liquidated damages.

Fairfield moved for summary judgment. Harper and National filed resistances and a cross motion for summary judgment. Fairfield resisted the cross motion for summary judgment. The district court denied Fairfield's motion but granted summary judgment to Harper and National and exonerated the bidder's bond. The court of appeals reversed the district court's decision and remanded the case to the district court for entry of summary judgment in favor of Fairfield. We granted Harper and National's application for further review.

## II. Issue.

We must determine whether any of the parties are entitled to summary judgment under the undisputed facts of this case.

## III. Scope of Review.

Our review of a court's granting or denying a motion for summary judgment is for correction of errors at law. *Nationwide Mut. Ins. Co. v. Kelly,* 687 N.W.2d 272, 274 (Iowa 2004). If there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Kiesau v. Bantz,* 686 N.W.2d 164, 171 (Iowa 2004). We can resolve a matter on summary judgment if the record reveals a conflict only concerns the legal consequences of undisputed facts. *Pecenka v. Fareway Stores, Inc.,* 672 N.W.2d 800, 802 (Iowa 2003).

## IV. Analysis.

Division VI of Iowa Code chapter 384 governs the contract-letting procedures for public improvements. *Istari Constr., Inc., v. City of Muscatine,* 330 N.W.2d 798, 799 (Iowa 1983). Section 384.97 requires a governing body to include in its notice to bidders

> [t]hat each bidder shall accompany the bid with a bid security as defined in this subsection and as specified by the governing body, as security that the *successful bidder* will enter into a contract for the work bid upon .... The bidder's security shall be in an amount fixed by the governing body, and shall be in the form of a cashier's or certified check drawn on a bank in Iowa or a bank chartered under the laws of the United States, or a certified share draft drawn on a credit union in Iowa or chartered under the law of the United States, or the governing body may provide for a bidder's bond with corporate surety satisfactory to the governing body. The bid bond shall contain no condition except as provided in this section.

Iowa Code § 384.97(5) (emphasis added). This provision was included in Fairfield's contract-letting documents. The resolution of the question before us turns on our interpretation of the phrase "successful bidder" contained in section 384.97(5).

Our goal in interpreting a statute is to determine the legislature's intent when it enacted the statute. *State v. Tague,* 676 N.W.2d 197, 201 (Iowa 2004). "We do not speculate as to the probable legislative intent apart from the words used in the statute." *State v. Adams,* 554 N.W.2d 686, 689 (Iowa 1996); *accord State v. Welton,* 300 N.W.2d 157, 160 (Iowa 1981) (stating, "when a statute is plain and its meaning is clear, courts are not permitted to search for meaning beyond its expressed terms"). We apply a plain and rational meaning consistent with the subject matter of the statute if the statute's language is clear and unambiguous. *ABC Disposal Sys., Inc. v. Dep't of Natural Res.,* 681 N.W.2d 596, 603 (Iowa 2004). Absent a statutory definition or an established meaning in the law, we give words in a statute their ordinary and common meaning by considering the context within which they are used. *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004).

The dictionary defines "successful" as "**1:** resulting or terminating in success." *Webster's Third New International Dictionary,* 2282 (unabr. ed.2002). "Success" is defined as "**3a:** The degree or measure of attaining a desired end." *Id.* Thus, the plain meaning of the words "successful bidder" requires that the governing body accept the bidder's bid. Interpreting the "successful bidder" as the bidder whose bid is accepted by the governing body is consistent with the statutory scheme of the contract-letting procedures contained in division VI of chapter 384.

The legislature requires all bidders to include a bond or other surety when bidding on a project to guarantee the successful bidder will in a timely manner enter into a contract with the governing body if the governing body accepts the bidder's bid. Iowa Code § 384.97(5). Once a governing body accepts a bid, the governing body no longer has the need to retain the bidders' bonds of the bidders whose bids were not accepted; thus, section 384.100 provides, "[t]he checks or bidder's bonds of the unsuccessful bidder must be promptly returned to the bidders by the governing body as soon as the successful bidder is determined or within thirty days whichever is sooner." Iowa Code § 384.100. By referring to the bidder whose bid is not accepted as the "unsuccessful bidder," and the bidder whose bid has been accepted as

the "successful bidder" in section 384.100, the legislature clearly intended the bidder whose bid is accepted by the governing body to be the "successful bidder."

Having determined the successful bidder is the bidder whose bid the governing body accepted, we must next determine whether Harper was the successful bidder under the undisputed facts in this record. In most instances, if the total cost to a city of a public improvement exceeds $25,000, the governing body must follow the procedures in division VI of chapter 384 and advertise for sealed bids. Iowa Code § 384.96. Under this requirement

> [t]he advertisement is nothing more than a solicitation of bids or proposals for doing the work or furnishing the materials, similar to an invitation to bid on a public contract that is not an offer to contract but a solicitation for an offer; the contractor's bid is the offer to contract. Thus, a bid, even the lowest responsible one, submitted in response to an invitation for bids, is only an offer that until accepted does not give rise to a contract between the parties.

64 Am.Jur.2d *Public Works and Contracts* § 52, at 685 (2001).

 A governing body's acceptance of a bidder's proposal to enter into a contract must be absolute and unconditional to be binding upon the parties. *Horsfield Const. Inc. v. Dubuque County*, 653 N.W.2d 563, 571 (Iowa 2002); *Jameson v. Joint Drainage Dist.*, 191 Iowa 920, 922, 183 N.W. 512, 513 (1921). If the governing body conditionally accepts a bid, no binding award of a contract exists between the governing body and the bidder. *Istari*, 330 N.W.2d at 800. An award does not create a contract when the governing body conditions its validity on the approval of another agency. *Id.*

 After Fairfield opened the bids on the Jordan Well Project, Fairfield referred the bids to the city engineer for review. The city engineer recommended Harper's bid be accepted subject to the concurrence of the DNR. Instead of passing a resolution to accept Harper's bid and notify Harper of its acceptance with the notice of bid acceptance contained in the contract-letting documents, Fairfield passed a resolution awarding the contract to Harper subject to the DNR's concurrence in the award of the contract. Had the city utilized the notice of bid acceptance contained in the contract-letting documents, Harper would have had ten days to enter into the contract and furnish the required performance bond and certificates of insurance.

The DNR reviewed Harper's proposal and determined it could not concur in awarding the contract to Harper. Upon receipt of the DNR's determination, the city engineer informed Harper that Fairfield could not award a contract to Harper until Harper complied with the MBE/WBE requirements. The DNR's refusal to concur in the award of the contact to Harper prevented Fairfield from accepting Harper's bid and forming a binding contract between the parties. Therefore, Harper was not the successful bidder, and as a matter of law, Fairfield is not entitled to the bidder's bond for Harper's failure to enter into a contract when Fairfield conditionally accepted Harper's proposal.

## V. Disposition.

Because Harper was not the successful bidder under Iowa Code section 384.97(5), Fairfield is not entitled to any recovery for Harper's failure to enter into a contract based upon Harper's bid for the Jordan Well Project. Therefore, we vacate the decision of the court of appeals and affirm the decision of the district court.

DECISION OF COURT OF AP-
PEALS VACATED; DISTRICT COURT
JUDGMENT AFFIRMED.