# IN THE COURT OF APPEALS OF IOWA

No. 15-0610
Filed May 11, 2016

**RODNEY HETTINGER,**
 Plaintiff-Appellant,

**vs.**

**CITY OF STRAWBERRY POINT, IOWA,**
 Defendant-Appellee.

_____

 Appeal from the Iowa District Court for Clayton County, George L. Stigler, Judge.

 Rodney Hettinger appeals from summary judgment entered for the City of Strawberry Point on his claims of breach of lease and damages. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

 Zachary C. Herrmann, Elkader, for appellant.

 Kevin R. Rogers of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

 Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Rodney Hettinger appeals from summary judgment entered for the City of Strawberry Point on his claims of breach of a farm lease and damages. We affirm the court's conclusions that the lease was properly terminated and Hettinger did not have a contractual right to bale the corn stover and to use it off the leased property or sell it. However, we reverse the judgment with respect to damages for the application of lime to the city farm, and remand for further proceedings on this element of Hettinger's claim for damages.

**I. Facts and Background Proceedings.**

The City of Strawberry Point, Iowa (hereinafter City), entered into a lease on February 16, 2007, with Rodney Hettinger, a Clayton County farmer, for eighty-five acres of farmland owned by the City (hereinafter the city farm). The City's efforts to terminate the lease spawned this litigation.

In April 2014, Hettinger filed an action seeking a declaration that he was the proper tenant of the city farm for the year after March 1, 2014. He also sought money damages for the value of corn stover he was not allowed to take from the farm after harvest, as well as for the lime he applied in 2011. The City filed a counterclaim for damages resulting from Hettinger's baling and selling corn stover following the harvest.

The written lease was approved by the city council on January 17, 2007. The parties used the four-page form lease from the Iowa State Bar Association, Form 135 Farm Lease—Cash or Crop Shares, revised January 2005.

The rent and terms related to lime application are set out in Paragraph 2 of the lease, entitled "RENT", which provides:

2. RENT. Tenant shall pay to Landlord as rent for the Real Estate (the "Rent"):

a. Total annual cash rent of $17,680.00 . . . , or

b. Crop Share— _0_% of corn, _0_ % of soybeans, and _0_% of all other crops raised on the Real Estate.

Paragraph 4, entitled "INPUT COSTS AND EXPENSES," states:

. . . The following materials, in the amounts required by good husbandry, shall be acquired by Tenant and paid for by the parties as follows.

. . . Lime and trace minerals shall be allocated over _--_ years. If this Lease is not renewed, and Tenant does not therefore receive the full allocated benefits, Tenant shall be reimbursed by Landlord to the extent Tenant has not received the benefits. Tenant agrees to furnish, without cost, all labor, equipment and application for all fertilizer, lime, trace materials and chemicals _____.

The lease specifically addresses the ownership of "straw, stubble and other plant materials" in paragraph 5 of the lease—entitled "PROPER HUSBANDRY; HARVESTING OF CROPS, CARE OF SOIL, TREES, SHRUBS AND GRASS"—and provides, in part:

Tenant shall farm the Real Estate in a manner consistent with good husbandry, seek to obtain the best crop production that the soil and crop season permit, properly care for all growing crops in a manner consistent with good husbandry, and harvest all crops on a timely basis. In the event Tenant fails to do so, Landlord reserves the right, personally or by designated agents, to enter upon the Real Estate and properly care for and harvest all growing crops . . . .

. . . .

Tenant shall distribute upon the poorest tillable soil on the Real Estate, unless directed otherwise by Landlord, all of the manure and compost from the farming operation suitable to be used. Tenant shall not remove from the Real Estate, nor burn, any straw, stalks, stubble, or similar plant materials, all of which are recognized as the property of Landlord. Tenant may use these materials, however, upon the Real Estate for the farming operations. . . .

In respect to automatic renewal of the lease, paragraph 9, "TERMINATION OF THE LEASE," reads:

> This Lease shall automatically renew upon expiration from year-to-year, upon the same terms and conditions unless either party gives due and timely written notice to the other of an election not to renew this Lease. If renewed, the tenancy shall terminate on March 1 of the year following, provided that the tenancy shall not continue because of an absence of notice in the event there is a default in the performance of the Lease. All notices of termination of this Lease shall be as provided by law.

In defending the claim for reimbursement of the lime expense, the City relies upon paragraph 16 of the lease, entitled "EXPENSES INCURRED WITHOUT CONSENT OF LANDLORD," which states: "No expense shall be incurred for or on account of the Landlord without first obtaining Landlord's written authorization. Tenant shall take no actions that might cause a mechanic's lien to be imposed upon the Real Estate."

The lease was signed by Hettinger, the mayor, and city clerk, and attached to the lease was a notarization that the lease was entered pursuant to city council approval on January 17, 2007.

After signing the original lease in 2007, Hettinger told the city council that he wanted to add lime to the cropland. An amendment to the lease was agreed upon and signed on December 4, 2007. The amendment provided as follows:

> 1. Lime and trace minerals shall be allocated over 7 years. If the Lease is not renewed and Tenant does not therefore receive the full allocated benefits, Tenant shall be reimbursed by Landlord to the extent Tenant has not received the benefits, on a pro rata basis. Tenant agrees to furnish, without cost, all labor, equipment, and application for all fertilizer, lime, trace materials and chemicals.
> 2. All of the terms of the original Lease shall remain the same.

Hettinger applied lime to the city farm land in 2011 at his cost of $6941.17 with the crop year 2012 as the base year.

At the February 6, 2013 city council meeting a budget workshop was held. During this workshop session, the council reviewed the revenues for the budget and it was suggested that the City obtain bids to rent the city farm for the 2014 crop year due to the general increase in farm rental rates. The council discussed termination of Hettinger's lease and the deadline for providing notice of termination. At the March 6, 2013 city council meeting, public hearing was held on the budget. The budget was approved by council vote, which included termination of the Hettinger lease and placing the city farm up for bid.

On August 19, 2013, the city administrator sent Hettinger a certified letter, which reads:

> We will not be automatically renewing our farm lease with you when it expires March 16, 2014. We will be going out for bids yet this fall and you will be notified of the date the bids are due. This will serve the notice that we will not be renewing our lease agreement with you.

Hettinger acknowledged receipt of the letter.

On October 16, 2013, the city council met in regular session and discussed the time frame for bids on leasing the city farm.

On December 4, the city council discussed Hettinger having baled stalks, "which is not allowed per the lease," as well as the date of lease expiration (February 28, 2013), and the time and procedure for taking bids on the city farm lease for the next crop year. The city council again discussed the baling of stalks during its December 18 meeting, as well as Hettinger's "notice of lime that was spread."

On January 8, 2014, an attorney representing Hettinger sent a letter to the mayor, stating the City owed Hettinger for lime applied to the city farm for five years in the amount of $4958.35.  In addition, his counsel asserted that Hettinger was entitled to the value of the stover for the 2013 crop year pursuant to Iowa Code section 562.5A (2013), arguing paragraph 5 of the lease did not apply to the "upper part of the plant that is part of the crop, namely the leaves and upper stalk which are the stover."

On March 6, 2014, the City entered into a lease with Michael Hunt for the city farm covering March 1, 2014, to March 1, 2017.

The City filed a motion for summary judgment, which Hettinger resisted. The district court granted the City's summary judgment with respect to the termination of the lease and for the damages claimed.  The court ruled Hettinger was properly notified of the termination of the lease, and a formal vote of the city council was not required to terminate the lease.  It also ruled that because Hettinger did not get written consent to incur the lime cost, he could not recover any part of the lime costs; and, because the lease explicitly states that no materials were to be removed from the farmland, he was not entitled to the damages claimed for the baled stalks.  However, the district court found the City's counterclaim for damages for the improper removal of corn stover was "within the ambit of the small claims court" and transferred that counterclaim to the small claims court.

Hettinger appealed.

Because the City's counterclaim remained, the supreme court found that to the extent the appeal was not from a final judgment it would treat the notice of

appeal as an application for interlocutory appeal, which the court granted. The case was then transferred to our court.

## II. Scope and Standard of Review.

We review the district court's ruling on a motion for summary judgment for the correction of errors at law. *See* Iowa R. App. P. 6.907; *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). The moving party is entitled to summary judgment if there are no disputed issues of material fact. *See* Iowa R. Civ. P. 1.981(3); *City of Fairfield v. Harper Drilling Co.*, 692 N.W.2d 681, 683 (Iowa 2005). "We can resolve a matter on summary judgment if the record reveals a conflict only concerns the legal consequences of undisputed facts." *City of Fairfield*, 692 N.W.2d at 683.

## III. Discussion.

Hettinger first argues that because the City must elect to not renew the lease, a formal vote of the council was required. Because no vote was formally taken, he contends the notice of termination of the lease was done without legal authority. He next maintains that because he incurred no cost for or on account of the City in applying the lime, the district court erred in concluding paragraph 16 was relevant to his claim for reimbursement. Finally, Hettinger contends he baled the stover for six consecutive years without any interference from the City and that under the doctrine of equitable estoppel, the City is deemed to have acquiesced to his actions and cannot claim now claim the terms of the lease have been broken.

*A. General principles.*

A lease is a contract, so we apply ordinary contract principles to interpret its meaning and legal effect. *Alta Vista Props.*, *LLC v. Mauer Vision Ctr.*, *PC*, 855 N.W.2d 722, 727 (Iowa 2014). We consider the lease as a whole, plus any relevant extrinsic evidence. *Id.* When determining meaning or ambiguity, we can take into account the relations of the parties, the subject matter of the transaction, any preliminary negotiations, trade usages, and the course of dealings between these parties. *Pillsbury Co. v. Wells Dairy*, *Inc.*, 752 N.W.2d 430, 436 (Iowa 2008). But the most important evidence of the parties' intent remains the words of the agreement. *Id.*

Iowa Code chapter 562 includes several provisions pertinent to the lease at issue here. Section 562.5 provides that "[i]n the case of a farm tenancy, the notice [of termination] must fix the termination of the farm tenancy to take place on the first day of March, . . . ." Section 562.7 provides the method of service and requires notice to be provided on or before September 1, although, if the notice is served by certified mail, the notice must simply be mailed before September 1.

Section 562.5A provides: "Unless otherwise agreed to in writing by a lessor and farm tenant, a farm tenant may take any part of the aboveground part of a plant associated with a crop, at the time of harvest or after the harvest, until the farm tenancy terminates as provided in this chapter."

*B. Termination of lease.*

We reject Hettinger's claim that the City's notice of termination of the lease was void for failure to take a formal vote not to renew the lease. The lease itself

provides that it would renew "unless either party gives due and timely written notice to the other of an election not to renew this Lease." The City gave such written notice.

Hettinger notes that the lease between Hettinger and the City states that "[a]ll notices of termination of this Lease shall be as provided by law." Timely and proper notice was provided pursuant to Iowa Code section 562.7.

Hettinger contends the notice was not properly authorized because the notice was signed by the city clerk who also serves as the city administrator and "[t]he law also requires a vote of the city council prior to termination." We reject this claim. Strawberry Point City Ordinance 10.02(1) provides, "All powers of the City are vested in the council except as otherwise provided by law or ordinance." Ordinance 14.02(2) states the city administrator has the power of "[a]dministration of all ordinances, resolutions, counsel proceedings and directives."

Ordinance 10.02(5) reads:

> The council shall *make or authorize the making of all contracts*, and no contract shall bind or be obligatory upon the city unless either made by ordinance or resolution adopted by the council, or reduced to writing and approved by the council, or expressly authorized by ordinance or resolution adopted by council. All contracts and all ordinances and resolutions making contracts or authorizing the making of contracts shall be drawn or approved by the City Attorney before the same are made or passed.

(Emphasis added.)

Here, we are not dealing with the making of a contract, but the termination of the automatic renewal of an annual contract. The city clerk/administrator was carrying out the directive of the city council in sending notice of termination. We

agree with the district court that the City was entitled to summary judgment on Hettinger's claim that the lease was not terminated legally. Moreover the city clerk or administrator's act was ratified by the city council's act on December 14, 2013, when it resolved to set a due date and advertise for bids for a new farm lease.[1]

*C. Lime application.*

Hettinger asserts the district court erred in granting the City summary judgment on the issue of whether he was entitled to a pro rata share of the lime application costs. We agree. In December 2007, the City entered into an amended agreement with Hettinger:

> Lime and trace minerals shall be allocated over 7 years. If the Lease is not renewed and Tenant does not therefore receive the full allocated benefits, Tenant shall be reimbursed by Landlord to the extent Tenant has not received the benefits, on a pro rata basis. Tenant agrees to furnish, without cost, all labor, equipment, and application for all fertilizer, lime, trace materials and chemicals.

The original lease, paragraph 4, also entitled the tenant to reimbursement if the lease was not renewed and the tenant had not received the full benefits of the lime application.

Notwithstanding, the City contends that it did not authorize the expense and cannot now be responsible for the cost of the lime application. Because Hettinger furnished the lime without cost to the City, paragraph 16 ("No expense

---

[1] "[R]atification is equivalent to previous authorization and operates upon the act ratified in the same manner as though authority had been given originally." 10A McQuillen, § 29:110, at 131; *see also Abodeely v. Cavras*, 221 N.W.2d 494, 503 (Iowa 1974) ("[F]ailure to repudiate the unauthorized action within a reasonable time after learning of the transaction will be deemed a ratification or affirmance."). Hettinger also claims the ratification act after September 1 does not relate back to prior to September 1. However, it has long been established that "[i]t is the general rule that the adoption by a principal of the unauthorized acts of an agent goes back to the inception of the transaction." *In re Estate of Johnson*, 232 N.W. 282, 286 (Iowa 1930) (citation omitted).

shall be incurred for or on account of the Landlord without first obtaining Landlord's written authorization.") was not triggered. Moreover, the expense was not incurred for or on the account of the landlord. Rather, Hettinger applied and paid for the lime with the intent to increase his own productivity but did not receive the full seven years' benefit of the lime because his leasehold terminated. The amendment to the lease controls and the district court erred in granting summary judgment to the City on this claim.

*D. Corn stover.*

Hettinger asserts that the lease should be interpreted to include corn stover as part of the crop, to which he was entitled for the 2013 crop year. He also contends the City is estopped by acquiescence because it did not object to his baling of stover in the past. Hettinger's claim must be considered in light of Iowa Code section 562.5A.

"Unless otherwise agreed to in writing by a lessor and farm tenant, a farm tenant may take any part of the aboveground part of a plant associated with a crop, at the time of harvest or after the harvest, until the farm tenancy terminates as provided in this chapter." Iowa Code § 562.5A. This court addressed this code section in *Slach v. Heick*, No. 14-0539, 2015 WL 1546445, at *3-6 (Iowa Ct. App. Apr. 8, 2015). Footnote 5 of the *Slach* opinion notes the definition of corn stover is "corn stalks, leaves, and cobs remaining aboveground on the field after the harvest of corn kernels." 2015 WL 1546445, at *5 n.5 (quoting Jack W. Leverenz, *Corn Flakes Aren't Just for Kellogg's: A Look at Corn Stover and its Effect on Leasing in the Landlord Tenant Relationship*, 17 Drake J. Agric. L 511, 527 (2012)).

We conclude the ordinary usage of the "crop" as used in paragraph 2 of this lease excludes "corn stover." The fact that corn stover has become a valuable commodity is not in dispute in this action. But the fact that corn stover has become an increasingly valuable commodity or crop, does not answer the issue raised in this case.

First, we note the legislature determined new legislation was required to address the commodity. In *Slach*, a case involving a farm lease that did not address corn stover or stalks, this court addressed section 562.5A in relation to a truncated version of the Iowa State Bar Association's farm lease form, stating:

> Because the lease *did not address who had the right to use the corn stalks remaining after the 2011 harvest* and because the parties to the lease did not intend to restrict Heick's right to remove the corn stalks, we examine whether recent legislation aids the resolution of this appeal. *See Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129–30 (1991) ("A contract depends on a regime of common and statutory law for its effectiveness and enforcement.").
> . . . .
> The legislature enacted the provision when corn stover emerged as "a growing and valuable commodity in the biofuel industry." Leverenz, 17 Drake J. Agric. L. at 527; *see also* Neil D. Hamilton, *Harvesting the Law: Personal Reflections on Thirty Years of Change in Agricultural Legislation*, 46 Creighton L. Rev. 563, 589 n.63 (2013) (noting amendment occurred "as a result of interest in producing cellulosic ethanol and the growing market for corn stalks"). One legal commentator has opined: "It seems fairly apparent section 562.5A is designed to favor the tenant farmer. Analyzing the law, the tenant farmer by default has rights to the 'aboveground parts of the plant' *unless the tenancy has ended or another scenario was drafted in the written contract."* Leverenz, 17 Drake J. Agric. L. at 528–529.

2015 WL 1546445, at *4-5 (emphasis added) (footnote omitted).

Secondly, unlike the facts in *Slach*, the lease at issue specifically references stalks and stubble as belonging to the landlord. In the case before

us, the parties agreed in writing that, "Tenant shall not remove from the Real Estate, nor burn, any straw, stalks, stubble, or similar plant materials, all of which are recognized as the property of Landlord." Hettinger contends that after harvesting the corn stover he still left a measurable amount of corn stalks. We acknowledge one commentator has suggested farm leases could provide for the specific amount of corn stover or stubble to be left upon the ground. *See* Leverenz, 17 Drake J. Agric. L. at 521. But here, the lease states "any" stalks or stubble are the property of the landlord. This was a term agreed upon by Hettinger.

Consequently, because the parties agreed otherwise, section 562.5A does not afford relief to Hettinger. We agree with the district court that Hettinger did not have a contractual right to bale the corn stover and to use it off the leased property or sell it.

Hettinger complains that the parties *subsequent* conduct should have been considered in interpreting this lease, citing *Hamilton v. Wosepka*, 154 N.W.2d 164 (Iowa 1967). But *Hamilton* stands for the proposition that "[e]xtrinsic evidence that throws light on the situation of the parties, the *antecedent* negotiations, the attendant circumstances and the objects they were thereby striving to attain is necessarily to be regarded as relevant to ascertain the actual significance and proper legal meaning of the agreement."[2] 154 N.W.2d at 168 (emphasis added). Thus, the fact that Hettinger removed corn stover from the

---

[2] "Antecedent" is defined as: "Going before; preceding." *The American Heritage College Dictionary* 59 (4th ed. 2004).

premises subsequent to the execution of the lease does not aid in our interpretation of the lease terms.

*E. Estoppel.*

Hettinger also argues that the doctrine of estoppel by acquiescence should apply and he should prevail because the City knew he had harvested the corn stover in the past, did not complain, and, in essence, waived its rights under the lease. This claim was not ruled on in the district court. "Consequently, 'there is nothing before us to review.'" *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted).

We affirm the court's conclusions that the lease was properly terminated and that Hettinger is not entitled to damages for corn stover retained by the City. However, we reverse the judgment with respect to damages in relation to the application of lime to the city farm, and remand for further proceedings on this element of Hettinger's claim for damages.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**